**CASE NO. 25-11265**

---

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

SALOMON BTESH,

*Appellant*,

v.

ISAAC BTESH,

*Appellee*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, CASE NO. 23-CV-23679-JB

---

## ANSWER BRIEF OF APPELLEE, ISAAC BTESH

---


**WHITE & CASE LLP**
Raoul G. Cantero
James N. Robinson
Zachary B. Dickens
W. Dylan Fay

200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700

*Counsel for Appellee, Isaac Btesh*

# STATEMENT REGARDING ORAL ARGUMENT

Appellee Isaac Btesh requests that the Court decide this case without oral argument. Oral argument is unnecessary because the trial court applied straightforward and longstanding principles of personal jurisdiction in dismissing the petition to confirm arbitral award. The facts and law are adequately explained in the briefs.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................ i
STATEMENT OF THE CASE ........................................................................ 1
I. Statement of facts ......................................................................... 2
A. Following a dispute over family assets, Salomon, Isaac, and their sisters execute the Panama Agreement ................................ 3
B. Salomon initiates three arbitrations, the last of which results in a final award against Isaac .............................................................. 5
II. Course of proceedings in the district court .......................................... 7
STANDARD OF REVIEW ........................................................................ 10
SUMMARY OF THE ARGUMENT ........................................................... 11
ARGUMENT ............................................................................................. 13
I. Isaac never consented to the exercise of personal jurisdiction in Florida because he did not agree to arbitration before the Beis Din of Florida or under the Beth Din Rules ............................................. 14
A. Isaac did not consent to personal jurisdiction in Florida under the Beth Din Rules because the Panama Agreement does not even mention those rules, so it cannot have incorporated them .. 14
B. Halachic law does not authorize a district court to exercise personal jurisdiction over Isaac ................................................... 18
C. Isaac did not waive his objection to personal jurisdiction by refusing to appear before the illegitimate Florida Tribunal ........ 22
II. Chapter 1, Section 9 of the FAA does not grant personal jurisdiction in proceedings to confirm an arbitration award under the Convention ........................................................................................ 25
A. The Convention and its implementing legislation preempt section 9 of the FAA .................................................................. 28

B. None of the cases Salomon cites uses section 9 to assert personal jurisdiction in proceedings to confirm an arbitration award under the Convention .......... 30

C. Salomon must satisfy the Fourteenth Amendment due-process and minimum-contacts tests .......... 32

III. The district court cannot exercise personal jurisdiction over Isaac based on Rule 4(k)(2) .......... 33

A. The district court cannot exercise general personal jurisdiction over Isaac under Rule 4(k)(2) because Isaac is not "at home" in the U.S. .......... 34

B. Even if Rule 4(k)(2) applied, Salomon did not allege sufficient contacts between Isaac and the United States that are connected to this dispute .......... 36

C. In a proceeding to confirm an arbitration award under the Convention, the exercise of personal jurisdiction (whether under Rule 4(k)(2) or any other ground) must satisfy due process .......... 38

IV. The district court cannot exercise quasi-in-rem jurisdiction over Isaac because he lacks minimum contacts with the forum .......... 40

A. *Shaffer* does not create an exception to the minimum-contacts test for unconfirmed arbitral awards because an arbitral tribunal is not a "court of competent jurisdiction" .......... 41

B. Salomon's authority does not hold that an arbitral tribunal is a "court of competent jurisdiction" under *Shaffer* .......... 43

C. An arbitral award is not the same as a judgment from a court of competent jurisdiction .......... 45

D. Salomon's allegations about Isaac's assets in Florida are not grounds to reverse the Order .......... 46

V. A district court cannot confirm an arbitral award without personal jurisdiction over the respondent .......... 46

CONCLUSION .......... 48

## TABLE OF CITATIONS

### CASES

*Acheron Portfolio Tr. v. Mukamal*,
No. 21-12111, 2022 WL 16707942 (11th Cir. Nov. 4, 2022)....................... 17

*Amazon.com, Inc. v. Glenn*,
No. C18-1289, 2018 WL 5921005 (W.D. Wash. Nov. 13, 2018) ................ 31

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ..................................................................... 38

*Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*,
283 F.3d 208 (4th Cir. 2002) .................................................................. 29, 43

*Bazemore v. Jefferson Cap. Sys., LLC*,
827 F.3d 1325 (11th Cir. 2016) ..................................................................... 21

*In re Braga*,
789 F. Supp. 2d 1294 (S.D. Fla. 2011) ......................................................... 41

*Cat Charter, LLC v. Schurtenberger*,
646 F.3d 836 (11th Cir. 2011) ..................................................................... 36

*Cerner Middle E. Ltd. v. iCapital, LLC*
939 F.3d 1016 (9th Cir. 2019) ..................................................................... 44

*CME Media Enters. B.V. v. Zelezny*,
No. 01 Civ. 1733, 2001 WL 1035138 (S.D.N.Y. Sep. 10, 2001) .......... 44, 45

*Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*,
66 F.4th 876 (11th Cir. 2023) .......................................................... 26, 28, 45

*Crescendo Mar. Co. v. Bank of Commc'ns*,
No. 15 Civ. 4481 (JFK), 2016 WL 750351 (S.D.N.Y. Feb. 22, 2016) ............................................................................................... 45

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .... 34, 35, 36

*Dean v. Sullivan*,
118 F.3d 1170 (7th Cir. 1997) .... 25

*Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*,
998 F.3d 449 (D.C. Cir. 2021) .... 18

*Don't Look Media LLC v. Fly Victor Ltd.*,
999 F.3d 1284 (11th Cir. 2021) .... 47

*easyGroup Ltd. v. Skyscanner, Inc.*,
No. 20-20062-CIV, 2020 WL 5500695 (S.D. Fla. Sept. 11, 2020) .... 38

*Equipav S.A. Pavimentação, Engenharia e Comercio Ltda. v. Bertin*,
No. 22 Civ. 4594 (PGG), 2024 WL 196670 (S.D.N.Y. Jan. 18, 2024) .... 44, 46

*Fils et Cables D'Acier de Lens v. Midland Metals Corp.*,
584 F. Supp. 240 (S.D.N.Y. 1984) .... 14

*First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*,
703 F.3d 742 (5th Cir. 2012) .... 29, 32, 39

*First Kuwaiti Gen. Trading & Contracting W.L.L. v. Kellogg Brown & Root Int'l, Inc.*,
141 F.4th 522 (4th Cir. 2025) .... 31

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .... 17

*Fraser v. Smith*,
594 F.3d 842 (11th Cir. 2010) .... 37

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*,
582 F.3d 393 (2d Cir. 2009) .... 30

*Fuld v. P.L.O.*,
606 U.S. 1 (2025)....................................................................................33

*Giuliani v. NCL (Bah.) Ltd.*,
558 F. Supp. 3d 1230 (S.D. Fla. 2021)..........................................................35

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002) ............................................ 25, 29, 30, 43, 47

*Gov't Emps. Ins. v. Elkholy,*
No. 21-16255 (MAS) (DEA), 2022 WL 2373917 (D.N.J. June 30, 2022) ..........................................................................................................41

*Gov't of the Lao People's Democratic Republic v. Baldwin*,
No. 2:20-cv-00195-CRK, 2021 WL 5435114 (D. Idaho Nov. 19, 2021) ..........................................................................................................44

*Gulfstream Aero. Corp. v. Oceltip Aviation 1 PTY LTD*,
31 F.4th 1323 (11th Cir. 2022)......................................................................15

*Hausman v. Earlswood Enters, Ltd.*,
No. 95 Civ. 9088, 1996 WL 527335 (S.D.N.Y. Sep. 16, 1996) ...................31

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)..........................................................................................17

*Hicks v. Bank of Am.*,
218 F. App'x 739 (10th Cir. 2007) ................................................................24

*Hunt v. Mobil Oil Corp.*,
654 F. Supp. 1487 (S.D.N.Y. 1987) ..............................................................41

*IBEW, Loc. Union No. 545 v. Hope Elec. Corp.*,
380 F.3d 1084 (8th Cir. 2004) .......................................................................23

*Inzajat Tech. Fund, B.S.C. v. Najafi*,
No. C11-04133, 2012 U.S. Dist. LEXIS 32068 (N.D. Cal. Mar. 9, 2012) ..........................................................................................................45

*JPay, Inc. v. Kobel*,
904 F.3d 923 (11th Cir. 2018) .......... 17

*Kahan Jewelry Corp. v. Best Opal Co.*,
977 N.Y.S.2d 667 (N.Y. Sup. Ct. July 10, 2023) .......... 22

*La Dolce Vita Fine Dining Co. v. Zhang*,
No. 21-cv-3071 (LAIC), 2023 WL 1927827 (S.D.N.Y. Feb. 10, 2023) .......... 45

*Langlais v. Pennmont Benefit Servs.*,
527 F. App'x 215 (3d Cir. 2013) .......... 24

*LLC SPC Stileks v. Republic of Moldova*,
985 F.3d 871 (D.C. Cir. 2021) .......... 45

*Louis Vuitton Malletier, S.A. v. Mosseri*,
736 F.3d 1339 (11th Cir. 2013) .......... 11, 37

*McDermott Int'l, Inc. v. Lloyds Underwriters of London*,
120 F.3d 583 (5th Cir. 1997) .......... 31

*McDonald v. City of W. Branch*,
466 U.S. 284 (1984) .......... 42

*McGinnis v. Ingram Equip. Co.*,
918 F.2d 1491 (11th Cir. 1990) .......... 32

*Medrite Care, LLC v. Medrite 243 LLC*,
No. 20-cv-3456 (MKV), 2020 WL 3962010 (S.D.N.Y. July 13, 2020) .......... 19

*N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co., Ltd. BBC Chartering USA, LLC*,
124 F.4th 1322 (11th Cir. 2025) .......... 10, 38

*New Skies Satellites B.V. v. Gospel Ministries Int'l*,
No. 1:15-CV-27, 2016 WL 11506970 (E.D. Tenn. Apr. 5, 2016) .......... 32

*Olin Holdings Ltd. v. State of Libya*,
73 F.4th 92 (2d Cir. 2023) ....................................................................18

*In re Parrot*,
118 F.4th 1357 (11th Cir. 2024) ..............................................................23

*Phoenix Aktiengesellschaft v. Ecoplas, Inc.*,
391 F.3d 433 (2d Cir. 2004) ............................................................ 29, 30

*PTA-FLA, Inc. v. ZTE USA, Inc.*,
No. 3:11-cv-510, 2015 WL 12819186 (M.D. Fla. Aug. 5, 2015) ................31

*Schafler v. Summer*,
783 F. App'x 932 (11th Cir. 2019) ..........................................................46

*Schneider v. Kingdom of Thail.*,
688 F.3d 68 (2d Cir. 2012) ......................................................................17

*Sequip Participações S.A. v. Marinho*,
No. 15-23737-MC, 2018 WL 10593628 (S.D. Fla. Oct. 16, 2018) .............36

*Shaffer v. Heitner*,
433 U.S. 186 (1977)........................................................ 35, 40, 41, 42, 46

*Sharp Corp. v. Hisense USA Corp.*,
292 F. Supp. 3d 157 (D.D.C. 2017)..........................................................36

*Shopmen's Loc. 539 v. Mosher Steel*,
796 F.2d 1361 (11th Cir. 1986) ..............................................................24

*Siegel v. Milstein,*
No. 21-CV-4032 (JS) (SIL), 2021 WL 5052748 (E.D.N.Y. Nov. 1, 2021) ......................................................................................................19

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir. 2014) ....................................................................36

*Spirit of the E., LLC v. Yale Prods., Inc.*,
No. 22-13122, 2023 WL 2890013 (11th Cir. Apr. 11, 2023) .......................24

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)....................................................................................14

*Stone & Webster, Inc. v. Triplefine Int'l Corp.*,
118 F. App'x 546 (2d Cir. 2004)...........................................................31

*Suazo v. NCL (Bahamas) Ltd.*,
822 F.3d 543 (11th Cir. 2016) ..................................................... 26, 28

*Telcordia Tech, Inc. v. Telkom SA Ltd.*,
458 F.3d 172 (3d Cir. 2006) ......................................................... 30, 48

*Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*,
432 F.3d 1327 (11th Cir. 2005) ................................................... 16, 20

*Thompson v. Carnival Corp.*,
174 F. Supp. 3d 1327 (S.D. Fla. 2016)...................................................35

*Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*,
683 F.3d 1266 (11th Cir. 2012) ................................................... 39, 47

*Vital Pharm. v. Pepsico, Inc.*,
528 F. Supp. 3d 1304 (S.D. Fla. 2020)...................................................24

*Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,489 U.S. 468
(1989)......................................................................................................16

*WasteCare Corp. v. Harmony Enters.*,
822 F. App'x 892 (11th Cir. 2020) .........................................................16

*Weststar Assocs., Inc. v. Tin Metals Co.*,
752 F.2d 5 (1st Cir. 1985)............................................................. 16, 22

*World Wide Supply Ou v. Quail Cruises Ship Mgmt.*,
802 F.3d 1255 (11th Cir. 2015) ...........................................................40

*Your CBD Stores Franchising, LLC v. Buckwalter*,
No. 8:23-cv-155; 2023 WL 6676671 (M.D. Fla. Oct. 12, 2023) .................24

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
596 U.S. 619 (2022)........................................................................ 41, 42

**US CONSTITUTIONAL PROVISIONS**

U.S. Const. art. IV § 1 ........................................................................42

**STATUTES**

9 U.S.C. § 9 ........................................................................ 27, 28

9 U.S.C. § 201 ........................................................................26

9 U.S.C. § 202 ........................................................................26

9 U.S.C. § 301 ........................................................................26

**FEDERAL RULES**

Fed. R. App. P. 32 ........................................................................50

Fed. R. Civ. P. 4 ........................................................................7

## STATEMENT OF THE CASE

This is an appeal from an order finding that the court lacked personal jurisdiction over the Appellee, Isaac Btesh, a citizen and resident of Panama. The underlying dispute involves a settlement among four siblings and related entities, all Panamanian citizens, over assets located in Panama, involving a contract—aptly called the Panama Agreement—written in Spanish and executed in Panama, which included a Panamanian dispute-resolution provision, and which identified an arbitration seat in Panama. That contract required the parties to resolve any disputes in Panama according to the procedures of their local Jewish congregation. And Appellant Salomon Btesh did—initially—seek arbitration against his brother, Isaac in Panama. That proceeding remains pending.[1]

But apparently dissatisfied with how the Panamanian arbitration proceedings were going, Salomon convened a competing tribunal in Miami with rabbis he hand-picked from the "Beis Din of Florida, Inc.," the name Salomon's chosen rabbis gave to the arbitration association they incorporated after Salomon hired them. That entity, which did not exist when the parties' agreement was signed, purported to

[1] The case caption lists Appellant as "Solomon Btesh" because of a spelling error in his original petition to confirm arbitral award. Appellee uses the correct spelling here.

summon Isaac but never properly served him. Isaac did not participate in the arbitration, yet the tribunal awarded Salomon $134 million as an "inheritance."

The Panama Agreement never mentions Miami. It does not refer to the "Beis Din of Florida." Nor does it mention the "Beth Din of America Rules" the tribunal applied. In short, nothing in the Panama Agreement authorized either the arbitration tribunal or its resulting award. And it certainly did not authorize enforcing such an award in a jurisdiction where Isaac does not live, does not work, did not agree to arbitrate, and lacks minimum contacts.

Salomon's amended petition to confirm the award asserted at least seven bases for personal jurisdiction. He did not assert that personal jurisdiction was unnecessary. The district court correctly followed precedent requiring it to decide personal jurisdiction before reaching the merits of the petition to confirm. It recognized that, because Isaac never consented to the arbitral procedure or venue his brother unilaterally devised, the arbitration could not supply jurisdiction. It then considered the scant evidence Salomon offered to establish either general or specific jurisdiction and found it insufficient. And it properly applied the Supreme Court's instruction that the minimum-contacts requirement applies to in rem proceedings.

## I. <u>Statement of facts</u>

Through selective quotations and omissions, Salomon's brief presents a misleading account of how a Panamanian dispute came to be decided by a Miami

rabbinical panel with no connection to the parties' agreement. We thus correct and supplement the facts. The Order of Dismissal (Doc. 92) details many of those facts, citing evidence in the record. None of the evidence was disputed, and Salomon does not contest any facts on appeal.

### A. Following a dispute over family assets, Salomon, Isaac, and their sisters execute the Panama Agreement

Appellee Isaac Btesh and Appellant Salomon Btesh are brothers and Panamanian citizens (Doc. 92 at 2). Their father, Alberto, founded Multibank, Inc. ("Multibank") and other financial institutions in Panama (*id.*). Salomon alleged that, when their father developed dementia, Isaac caused him to transfer his shares in Multibank to Isaac and his sisters, at Salomon's expense (*id.* at 3). A few months after their father passed away, Salomon's siblings sold their interest in Multibank for about $428 million (*id.*).

Eventually, Salomon, Isaac, and their sisters reached an agreement on how to distribute assets from the proceeds of Multibank's sale (Doc. 92 at 3). Their agreement was signed in Panama by all siblings as well as Fundación Aryisa and another private-interest foundation organized under the laws of Panama (the "Panama Agreement") (*id.*).

The Panama Agreement contains a single-sentence arbitration clause providing for arbitrating any disputes before their local Jewish congregation:

> In the event of any difference or dispute as to the performance, interpretation, execution and/or scope of this document, THE PARTIES submit exclusively to the alternative dispute resolution methods in effect for members of the Israeli [sic] [Israelite] Charitable [sic] [Benevolent] Society Shevet Ahim, waiving any other legal recourse in any jurisdiction.

(Doc. 51-1 at 24). The Israelite Benevolent Society Shevet Ahim is a Jewish congregation located in Panama (Doc. 93 at 4). The only dispute resolution methods in effect for members of Shevet Ahim are mediation and arbitration before a rabbinical court or a lay tribunal in Panama, where the congregation is incorporated and where it operates (Doc. 58-1 at 5 ¶ 28). Contrary to Salomon's assertion (br. 5), the Panama Agreement says nothing about "Din Torah," "Beth Din," or the application of "Halachic law." It states simply that the parties must arbitrate according to the procedures of Shevet Ahim and that they waive the right to any other jurisdiction (Doc. 51-1 at 24). Salomon also states as fact that Isaac "confirmed" his agreement to "religious arbitration" "before *a* rabbinical court" (br. 5–6). But the declaration he selectively quotes states that the parties agreed to "mediation and arbitration before a Rabbinical court *or a lay member tribunal* ***at Shevet Ahim in Panama***" (Doc. 58-1 at 5 ¶ 28) (emphasis added).

### B. Salomon initiates three arbitrations, the last of which results in a final award against Isaac

In August 2020, a dispute arose under the Panama Agreement. As required by its terms, Salomon requested a rabbinical arbitration in Panama through Shevet Ahim (Doc. 58-1 at 6 ¶ 31). Shevet Ahim summoned Isaac (*id.*). Isaac accepted the summons and appeared in the Panama Shevet Ahim for an arbitration (*id.*). But while that proceeding was pending, Salomon started a second, identical arbitration in Miami through an institution called "Badatz Miami" (*id.* ¶ 32). Isaac did not appear because, as the parties had agreed, the matter was already in arbitration through Shevet Ahim in Panama (*id.*). Salomon later abandoned that second arbitration (Doc. 58 at 2, 4).

Despite the Panama arbitration and another arbitration pending in Miami, Salomon launched yet a third proceeding—this time before a tribunal authorized by an organization calling itself the Beis Din of Florida ("Florida Tribunal") (Doc. 51 at 12–13 ¶ 60; Doc 51-1 at 2). Salomon himself chose the tribunal members (Doc. 85 at 7). Isaac did not appear before the Florida Tribunal, but it held the arbitration anyway, considering only Salomon's evidence (Doc. 51 at 13 ¶¶ 62–64). The Florida Tribunal asserted "jurisdiction over ALL matters pertaining to the Panama [A]greement" including "any background issues that influence its implementation," but did not address whether it had personal jurisdiction over Isaac (Doc. 51-1 at 13).

The Panama Agreement's scope is limited to distribution of the benefits of Fundación Aryisa between the siblings and other entities, with an additional payment to Salomon conditioned on a sale of Multibank (Doc. 51-1 at 21–22). But the Florida Tribunal's award considered issues beyond that—such as "inheritance" under Jewish law (*id.* at 6, 10–12). The Florida Tribunal found, among other things, that the transfer of the Multibank shares from Mr. Btesh Sr. to Isaac was void; that the Btesh sisters, as women, were not entitled to *any* inheritance under Jewish law; and that Isaac owed Salomon nearly $135 million (*id.* at 10; Doc. 92 at 5).

After the Florida Tribunal issued its final award, Isaac moved to vacate it in Panama, which is the seat of arbitration under the Panama Agreement and thus the primary jurisdiction for any arbitration award rendered under that agreement. The Panama Supreme Court concluded that it had primary jurisdiction (and was thus the court with power to vacate) because the agreement was signed in Panama, its arbitration clause directed the parties to decide their disputes in Panama using an entity located in Panama (Shevet Ahim), it concerned assets located in Panama, and its effects would be felt in Panama (Doc. 87-1 at 20–21). The Panama Supreme Court further held that the Shevet Ahim had sole jurisdiction over the underlying dispute (*id.* at 21). It vacated the award on four grounds: (1) that inheritance was not within the Panama Agreement's scope; (2) that the arbitration was invalid because it was not conducted with the parties' agreement to arbitrate under Shevet

Ahim procedures; (3) that the arbitration violated Panama public policy requiring inheritance disputes to be resolved only in Panamanian courts; and (4) that the Florida Tribunal lacked the power to hear the dispute under the Panama Agreement and infringed on Isaac's due-process rights (*id.* at 28–30, 33–34, 35–39, 44–46).

## II. Course of proceedings in the district court

In September 2023, Salomon filed his Petition to Confirm (Doc. 1). After a dispute over service of process, Salomon filed an Amended Petition ("Petition") (Doc. 51). The Petition took the kitchen-sink approach to personal jurisdiction—alleging every conceivable basis. First, it alleged that Isaac "consented" to personal jurisdiction in the Southern District of Florida under rules that the Florida Tribunal applied—but did not identify or attach those rules (Doc. 51 at 5 ¶ 15). It then alleged specific jurisdiction under the Florida long-arm statute for (1) operating a business venture in Florida; and (2) breaching a contract in Florida (*id.* ¶ 38). It also alleged general personal jurisdiction based on Isaac's allegedly "engaging in substantial and not isolated activity within this state" (*id.* ¶ 39) and under Federal Rule of Civil Procedure 4(k)(2) (*id.* ¶ 40). It then alleged personal jurisdiction under 9 U.S.C. section 9—a provision of Chapter 1 of the Federal Arbitration Act ("FAA") that applies only to domestic arbitrations (*id.* ¶ 41). And without identifying property Salomon sought to attach, it alleged that the "Court also has quasi in rem jurisdiction to recognize and enforce the Arbitral Award" (*id.* ¶ 45).

The district court ordered jurisdictional discovery (Doc. 48). Salomon obtained documents from Isaac and took depositions—including Isaac's (in Panama) (Docs. 83-1, 83-2, 83-3, 83-4).

After discovery was complete, Isaac moved to dismiss the Petition for lack of personal jurisdiction (Doc. 58). He attached a declaration addressing each ground raised (Doc. 58-1 at 2–5). Isaac explained that he is a citizen and resident of Panama (Doc. 58-1 at 2 ¶¶ 3–4). He has never resided in Florida (*id.* ¶ 5). He visits Florida for personal reasons unrelated to business (*id.* ¶ 6). He has never personally operated, conducted, engaged in, or carried out business in Florida; he has no office or agency in Florida; he has no mortgage or lien on real property in Florida; and he does not personally own real property in Florida (*id.* ¶¶ 8–9, 12, 15). He does not engage in substantial activities in Florida (*id.* ¶ 22). The Panama Agreement did not require performance in Florida (Doc. 51-1 at 21–22).

Isaac does not personally own real property in Florida (Doc. 58-1 at 3 ¶ 12). He and his wife jointly own a Panamanian corporation called NMB Aventura Realty, Inc. ("NMB Realty"), which in turn owns a condominium in Aventura (*id.*). Contrary to Salomon's statement of facts (br. 8), which cites only allegations in the Petition, Isaac did not "purchase" the condo. It was a gift from Isaac's mother-in-law to Isaac and his wife, who own it through NMB Realty (Doc. 58-1 at 3 ¶ 12).

Also contrary to Salomon's statement of facts (br. 9), Isaac does not have bank accounts in Florida (Doc. 58-1 at ¶ 17). He has one bank account at JP Morgan Bank in New York with a small balance used to pay credit cards and other expenses (*id.*).

Isaac's other connections to Florida are isolated personal travel, transferring in Miami on flights from Panama to other areas in the United States, and a cellular phone with a Florida area code, which he uses when traveling in the United States (Doc. 58-1 at 4 ¶¶ 19, 22).

Isaac has never agreed to arbitrate any dispute arising from the Panama Agreement in any jurisdiction but Panama (Doc. 58-1 at 4–5 ¶ 29).

Salomon opposed Isaac's motion to dismiss (Doc. 63), identifying for the first time the rules applied by the Florida Tribunal as the "Beth Din Rules and Procedures" (Doc. 63-1 at 2 ¶ 7). Those rules are not mentioned in or incorporated by the Panama Agreement (Doc. 51-1 at 21–24). The Panama Agreement also does not mention the organization that promulgated those rules—the "Beth Din of America" (*id.*). And the Panama Agreement does not mention the organization that adopted those rules for purposes of Salomon's ex-parte arbitration, the Beis Din of Florida (*id.*). In fact, Beis Din of Florida, Inc. did not even exist when the parties executed the Panama Agreement. *Compare* Doc. No 51-1 at 24 (Panama Agreement, dated 2020) *with* Doc. 31-1 (Beis Din of Florida, Inc. articles of

incorporation, dated 2023). Thus, the Panama Agreement could not have agreed to "Beth Din Rules and Procedures."

After a hearing on the motion to dismiss, the district court ordered supplemental briefing on whether quasi-in-rem jurisdiction applies to enforce an unconfirmed arbitral award (Doc. 78). Following briefing on that issue, the district court held another hearing (Doc. 84).

The district court's comprehensive 51-page order ("Order") analyzed and rejected each of Salomon's asserted bases for jurisdiction: specific and general jurisdiction under Florida's long-arm statute, consent under the arbitration clause or Jewish law, Rule 4(k)(2), Section 9 of the FAA, and quasi in rem jurisdiction (Doc. 92). It concluded that Salomon failed to establish any valid basis to subject a Panama-domiciled individual to personal jurisdiction in Florida.

## STANDARD OF REVIEW

Questions of law are reviewed de novo, as are facts that the district court determines *prima facie* rather than by weighing evidence. *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co., Ltd. BBC Chartering USA, LLC*, 124 F.4th 1322, 1333 (11th Cir. 2025). But a "defendant challenging jurisdiction may submit 'affidavit evidence in support of its position'" that the district court may rely on if undisputed. *Id*. Where the district court has made findings based on uncontroverted evidence or declarations, the Court reviews those factual findings for clear error. *See*

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). That is the case here.

## SUMMARY OF THE ARGUMENT

Salomon's myriad theories of personal jurisdiction fail. Isaac did not consent to jurisdiction in Florida. The Panama Agreement binds the parties to arbitrate disputes according to the alternative dispute resolution methods of Shevet Ahim, a Jewish congregation *in Panama*. It does not mention Florida, the Beis Din of Florida arbitral body that Salomon hand-picked to preside over his illegitimate arbitration, or the Beth Din of America rules that they purported to employ. Because arbitration is a matter of consent, an arbitration agreement can only impose consent to personal jurisdiction by "clearly and unmistakably" incorporating rules that say so. The Panama Agreement does not even implicitly—much less "clearly and unmistakably"— incorporate any such rules; and "Halachic law" on its own cannot independently supply federal-court jurisdiction. Isaac also did not waive jurisdictional objections by refusing to appear at an illegitimate forum he never agreed to—especially where his appearance would have constituted consent to that forum's jurisdiction.

Section 9 of the FAA applies only to domestic arbitrations. It does not grant personal jurisdiction in a case under the New York or Panama Conventions. Chapter 2 (section 207) of the FAA governs confirmation of international awards under the

New York Convention, and circuits have rejected attempts to import section 9's consent-to-confirmation and personal-jurisdiction framework into Convention proceedings. Salomon cites no case applying section 9 to create personal jurisdiction in this context, and every circuit to consider the question holds that the Convention by itself cannot supply personal jurisdiction. Thus no gap in the Convention or its implementing legislation in Chapter 2 exists for section 9 to fill. Salomon's new Fifth Amendment theory is both unpreserved and inapposite: since no applicable federal statute confers personal jurisdiction, the Fifth Amendment does not apply. If it did, personal jurisdiction over a private individual, in a private dispute, who has limited contacts with the forum would still be inappropriate.

Salomon's argument that Rule 4(k)(2) authorizes general jurisdiction fails because under Supreme Court precedent, general jurisdiction exists only where the defendant is "at home," and that standard applies in Convention enforcement actions. In addition, Isaac does not have the exceptional nationwide contacts that could make him amenable to all-purpose jurisdiction in the United States. The district court properly found, on undisputed evidence, that the limited, attenuated contacts Salomon identifies—vacation visits, a company's vacation condo, a New York bank account, minor royalties, and sporadic donations—are insufficient.

Quasi-in-rem jurisdiction fares no better. Salomon acknowledges that the minimum contacts test still applies to in-rem jurisdiction, which is fatal because the

district court correctly found that Isaac does not have sufficient contacts with the forum. As a backup, Salomon argues that an "exception" exists for enforcement of court judgments. But an unconfirmed arbitral award is not a court judgment because an arbitral tribunal is not a "court of competent jurisdiction."

Finally, the amicus's argument cannot overcome settled law that a federal court may not confirm an arbitral award under the New York Convention unless it has personal jurisdiction over the respondent. Courts uniformly require a petitioner to satisfy the due-process and minimum-contacts tests before enforcing awards under the Convention. Nothing in the FAA or the Convention displaces that constitutional prerequisite. As the Constitution requires, the district court resolved personal jurisdiction first and found it lacking. It was right.

The Order should be affirmed.

## ARGUMENT

Salomon offers a smorgasbord of arguments for asserting personal jurisdiction over Isaac. As the district court correctly found, none works. Headings I through IV below respond to the corresponding arguments in Salomon's initial brief. Heading V responds to the amicus brief.

## I. Isaac never consented to the exercise of personal jurisdiction in Florida because he did not agree to arbitration before the Beis Din of Florida or under the Beth Din Rules

Salomon argues that Isaac consented to personal jurisdiction in Florida "by contracting to apply dispute resolution procedures codifying such consent" (br. 20). But "a party cannot be compelled to submit his dispute to arbitration under rules to which he has not assented." *Fils et Cables D'Acier de Lens v. Midland Metals Corp.*, 584 F. Supp. 240, 244 (S.D.N.Y. 1984); *see also Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) (holding that an implicit agreement "to authorize [a specific type of] arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate").

As shown below, (A) Isaac did not consent to the "Beth Din Rules"; (B) Halachic law does not create personal jurisdiction; and (C) Isaac did not waive his objection to personal jurisdiction by refusing to appear before the illegitimate Florida Tribunal.

### A. Isaac did not consent to personal jurisdiction in Florida under the Beth Din Rules because the Panama Agreement does not even mention those rules, so it cannot have incorporated them

The Tribunal's Final Award cites Jewish (or "Halacha") law, but does not identify the procedural rules under which it conducted the arbitration (if any) (Doc. 51-1 at 4). It does not address personal jurisdiction—whether before the Florida Tribunal or in a confirmation proceeding (*id.*). Yet Salomon's expert (in a

declaration filed in response to Isacc's motion to dismiss) asserted that the "Beth Din Rules and Procedures" promulgated by the Beth Din of America applied "by default" to the Beis Din of Florida (Doc. 63-1 at 2 ¶ 7). Relying on that assumption, Salomon argues that Isaac consented to personal jurisdiction in Florida courts because those Beth Din Rules include a provision for consent to judicial confirmation of awards made under them (br. 13, 21–24; Doc. 63-1 at 4–5).

In other words, what the district court described as Salomon's "series of stacked inferences" (Doc. 92 at 26) goes like this: (1) Isaac submitted to the dispute resolution methods in effect for Shevet Ahim; (2) Shevet Ahim applies Jewish law; (3) the Beis Din of Florida purports to apply Jewish law; therefore, (4) Isaac consented to the Beis Din of Florida and its rules.

Under Salomon's warped syllogism, any rabbinical tribunal anywhere in the world would have jurisdiction over Isaac to interpret the Panama Agreement. As the district court noted, "[t]o accept the Petitioner's reading is to find that the Respondent consented to jurisdiction anywhere, a finding that is too broad and unsupported for the Court to entertain" (Doc. 92 at ¶ 33).

The law does not permit such a vague and unbounded delegation of authority. As this Court has warned, "if you want certain rules to apply to the handling of your arbitration, the contract must say so clearly and unmistakably." *Gulfstream Aero. Corp. v. Oceltip Aviation 1 PTY LTD*, 31 F.4th 1323, 1325 (11th Cir. 2022); *see also*

*Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion"). The Panama Agreement says only that the parties are bound by "the alternative dispute resolution methods in effect for members of" Shevet Ahim (Doc. 51-1 at 24). It does not even mention the Beth Din Rules—let alone incorporate them. As the district court explained, "the plain language of the Arbitration Clause makes no reference to rules other than 'the alternative dispute resolution methods in effect for members of the Israeli Charitable Society Shevet Ahim,'" and so could not have incorporated the Beth Din Rules (Doc. 92 at 32).

The district court considered—but distinguished—Salomon's cases. In those cases, "the agreement in question clearly and expressly incorporated rules that the courts then applied to the parties" (Doc. 92 at 31). *See WasteCare Corp. v. Harmony Enters.*, 822 F. App'x 892, 895–96 (11th Cir. 2020) ("where the parties *expressly* incorporate" arbitral rules, they delegate questions of arbitrability to an arbitrator) (emphasis added); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (same); *Weststar Assocs., Inc. v. Tin Metals Co.*, 752 F.2d 5, 6 (1st Cir. 1985) (addressing express incorporation of AAA rules).

Salomon then argues that the district court should not have decided whether Isaac consented to the Florida Tribunal's jurisdiction and rules because Isaac "agreed to delegate all arbitrability issues to the Beis Din and then refused to appear

before it" (br. 19, 30–33). But to delegate the issue of arbitrability to the Beis Din of Florida, the Panama Agreement must have "clearly and unmistakably" identified that organization *and* must have adopted its rules. *See JPay, Inc. v. Kobel*, 904 F.3d 923, 937 (11th Cir. 2018); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.") (cleaned up; citation omitted). The Panama Agreement does not delegate arbitrability—or any other issue—to the Beis Din of Florida. Nor does it explicitly incorporate its rules. And it could not have—the Panama Agreement was executed three years *before* the Beis Din of Florida was created (*see* Doc. 31-1).[2] Every case Salomon cites (br. 32–33) emphasizes that delegation can only result from "express incorporation" of specific rules. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 66 (2019) (holding that express incorporation of AAA rules delegated issues of arbitrability); *Schneider v. Kingdom of Thail.*, 688 F.3d 68, 72 (2d Cir. 2012) (holding that delegation occurs where "parties explicitly incorporate rules that

---

[2] In an unpublished opinion, this Court recently illustrated the high standard for incorporation of specific arbitral rules. *See Acheron Portfolio Tr. v. Mukamal*, No. 21-12111, 2022 WL 16707942 (11th Cir. Nov. 4, 2022) (unpublished opinion). There, the agreement "invoked" the JAMS Rules of arbitration, but "did not say they would govern the arbitration itself." *Id*. at *3. Even in that situation this Court held that it could not "say that the parties 'clearly and unmistakably' agreed that JAMS Rules . . . govern." *Id.* at *4.

empower an arbitrator to decide issues of arbitrability"); *Olin Holdings Ltd. v. State of Libya*, 73 F.4th 92, 105 (2d Cir. 2023) (same).

At most, the Panama Agreement may have delegated disputes over "the performance, interpretation, execution and/or scope of this document" to *Shevet Ahim*—the only arbitral entity the agreement identifies (Doc. 51-1 at 24). Salomon recognized that fact when he initiated his first arbitration with Shevet Ahim in Panama (*See* Doc. 58-1 ¶¶ 31–32). But since the Panama Agreement does not expressly incorporate the Beth Din Rules, the district court correctly rejected Salomon's argument that Isaac consented to personal jurisdiction in the confirmation action (Doc. 92 at 34). *See Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 998 F.3d 449, 462 (D.C. Cir. 2021) ("The parties' mention of the AAA in their agreement does not embody an incorporation of the AAA rules, let alone a clear and unmistakable incorporation.").

### B. Halachic law does not authorize a district court to exercise personal jurisdiction over Isaac

Salomon next argues that "Halachic law" establishes personal jurisdiction over Isaac in federal district court (br. 21–24; 26–28). That argument fails for the same reason as his argument based on the Beth Din Rules: the Panama Agreement does not "clearly and unmistakably" incorporate Halachic law—or even Jewish law generally. Nor could it—Jewish law is a legal framework (like the law of a state or a nation), not an arbitral forum or a defined set of arbitral rules. Under Jewish law,

the arbitral forum is an entity designated in the parties' agreement—such as Shevet Ahim or the Beis Din of Florida (Doc. 67-1 at 3 ¶ 5) (Declaration of Rabbi Yosef Josilowsky) (explaining that Jewish law "requires that parties agree to the specific arbitral forum (known as a *Beis Din* or *Bais Din* or *Beth Din*) and designate that forum to resolve their dispute"). Courts have recognized as much, holding that to be enforceable pursuant to Jewish law an arbitration agreement must designate "a specific, arbitral forum or a particular Beis Din." *Siegel v. Milstein*, No. 21-CV-4032 (JS)(SIL), 2021 WL 5052748, at *4 (E.D.N.Y. Nov. 1, 2021); *Medrite Care, LLC v. Medrite 243 LLC*, No. 20-cv-3456 (MKV), 2020 WL 3962010, at *3 (S.D.N.Y. July 13, 2020) (holding that parties are required to consent "not just to litigate in beth din but in a particular [beth din]"). The Panama Agreement designated the Shevet Ahim in Panama as that forum.

Salomon's argument is also contradicted by his own expert's testimony. Rabbi Lerner did not assert that Jewish or Halachic law requires parties to submit to personal jurisdiction in secular courts to confirm arbitration awards. Rather, he testified that the "Beth Din Rules and Procedures codify Halachic Law" and that under *those rules* "the parties 'shall be deemed to have consented that judgment upon the arbitration award may be entered in any Federal or state court having jurisdiction thereof'" (Doc. 63-1 at 3–4 (quoting Beth Din Rules § 33(c))). The Lerner declaration boils down to another chain of inferences: that Isaac consented to Shevet

Ahim; that Shevet Ahim applies Jewish law; that all codifications of Jewish law—including the Beth Din Rules—therefore apply; and that the Beth Din Rules, in turn, establish Isaac's consent to federal court jurisdiction. That attenuated chain falls far short of the "clear and unmistakable" showing necessary to incorporate such rules. *Terminix*, 432 F.3d at 1331–32.

Salomon contests the district court's chain-of-inferences finding, arguing that Rabbi Lerner testified that waiver of jurisdiction "is a fundamental tenant [*sic*] of Halachic law," not just of the Beth Din Rules (br. 27–28). This argument fails for two reasons. First, Salomon stretches his expert's declaration too far. He relies on paragraphs 7 and 8 of the Lerner Declaration, which merely state that the Beth Din Rules codify Halachic law—not that Halachic law includes a "waiver rule" (Doc. 63-1 at 2–3 ¶¶ 7–8). Second, the "waiver rule" Salomon refers to waives an objection to the *Beis Din's* jurisdiction over *the dispute*—not to personal jurisdiction in confirmation proceedings (br. 27; Doc. 63-1 at 3 ¶ 10).

Finally, Salomon contends that his arguments about Halachic law and the Lerner Declaration are "unrebutted" and "undisputed" (br. 24). Salomon ignores that Isaac denied that he ever consented to the Beth Din Rules, denied that he submitted to all tribunals applying Jewish law anywhere, and submitted an expert declaration directly refuting Lerner's inferential chain (Doc. 67 at 5–8; *see also* Doc. 67-1 at 4 ¶ 11 ("Under Jewish law, a contractual consent between parties to govern

a dispute under *Halacha* does not constitute consent to the submission to the jurisdiction of any *Beis Din* anywhere in the world.”)). Salomon dismisses this as an argument about “whether the *Panel* had jurisdiction” (br. 23), but the issue of whether Isaac agreed at all to arbitrate before the Beis Din of Florida and under its rules is a “threshold question” only a court can resolve. *See Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (a court, not an arbitrator, must decide whether an agreement to arbitrate exists). The district court properly held that Isaac did not so consent.

Salomon’s other characterizations of Isaac’s arguments are also wrong. He asserts that “Isaac did not deny, and thereby admitted,” his jurisdictional allegations about Halacha law (br. 32). To start, Isaac has not filed an answer to the Petition, where he could admit or deny specific allegations. Rather, he contested them by moving to dismiss for lack of personal jurisdiction. And Salomon claims that Isaac admitted that any tribunal applying Jewish law would suffice because Isaac “confirmed below that Paragraph 16 requires ‘arbitration before ***a*** Rabbinical court’” (implying that Isaac agreed to arbitrate in *any* rabbinical court) (br. 31 n.4). But his truncated quote omits the rest of the sentence: “. . . or a lay member tribunal at Shevet Ahim in Panama” (Doc. 58-1 at 5 ¶ 28). Far from admitting that the Panama Agreement permits arbitration before any rabbinical court anywhere in the world—

as Salomon's argument implies—Isaac confirmed that it required arbitration exclusively at Shevet Ahim in Panama.

### C. Isaac did not waive his objection to personal jurisdiction by refusing to appear before the illegitimate Florida Tribunal

Salomon next argues that Isaac "waived his right to contest the Panel's jurisdiction by refusing to appear in the Arbitration" (br. 33). To start, it is not clear what that has to do with the *district court*'s exercise of personal jurisdiction—particularly since the Florida Tribunal did not address personal jurisdiction. But Salomon's attempt to put Isaac in a Catch-22 situation is also legally wrong. As the district court acknowledged, had Isaac appeared at the illegitimate arbitration, "there could be little argument that he would have consented to the jurisdiction of that Rabbinical Panel" (Doc. 92 at 33). Worse, Isaac would have "weakened his argument against [the district court's] personal jurisdiction" (*id.*). Isaac could not risk waiving his objections to the Florida Tribunal's jurisdiction—personal or otherwise. *See, e.g.*, *Kahan Jewelry Corp. v. Best Opal Co.*, 977 N.Y.S.2d 667, 667 (N.Y. Sup. Ct. July 10, 2023) ("By consenting to appear before the Beth Din in court on February 29, 2012, respondents waived any objection to jurisdiction of the Beth Din and acknowledged the validity of the arbitration provisions contained in the Guaranty."); *Weststar Assocs.*, 752 F.2d at 7 (holding that respondent "consented to the Boston locale by not objecting, as provided in Rule 11, and by itself participating in the arbitration").

Salomon stretches his argument until it snaps—claiming that Isaac's refusal to appear *also* waived a challenge to personal jurisdiction in a Florida federal court (br. 33). Thus, Salomon essentially argues that Isaac was trapped in a Catch-22: he waived his right to contest jurisdiction by not appearing for the arbitration; but by appearing for the arbitration he would have waived his right to contest jurisdiction. The law does not permit such a "a no-win loop."[3] The district court saw through the absurdity of this argument's implications (Doc. 92 at 33).

The cases Salomon relies on do not stand for the propositions he asserts (br. 33–34). For example, the Eighth Circuit did not hold, as he suggests, that a party who "refused to participate in arbitration waived challenges to arbitrability" (br. 34). That was the *appellant's argument* based on prior Eighth Circuit cases, which the court clarified: "We did not state that a party must provide notice [to the arbitrators] *and* file a timely motion to vacate. Rather we said a party may provide notice *or* file a timely motion to vacate." *IBEW, Loc. Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1102 (8th Cir. 2004) (emphasis in original). Salomon characterizes another case as holding that a respondent waived an objection to the arbitrator's

[3] "In his 1961 novel *Catch-22*, Joseph Heller describes the impossible situation faced by World War II pilots. If they were insane, they could be grounded from flying. But if they asked to be grounded from a dangerous mission, that request showed a concern for their safety—proof of sanity. So, if a pilot asked to stop flying, it meant he was sane and should keep flying. But if he flew, he must have been insane and was grounded. It was a no-win loop." *In re Parrot*, 118 F.4th 1357, 1364 (11th Cir. 2024) (Tjoflat, J., concurring).

personal jurisdiction by failing to raise it with the arbitrator (br. 33). But that court held that a personal-jurisdiction objection was waived precisely because the respondent "vigorously participated in the arbitration." *Hicks v. Bank of Am.*, 218 F. App'x 739, 746 (10th Cir. 2007). Far from supporting Salomon's argument, *Hicks* justifies Isaac's refusal to appear before the illegitimate Florida Tribunal.

None of Salomon's remaining cases holds that a party's failure to appear at an arbitration waives objections to jurisdiction (*see* br. 33–34). *See Shopmen's Loc. 539 v. Mosher Steel*, 796 F.2d 1361, 1365 (11th Cir. 1986) (rejecting an objection to arbitrability where the parties jointly selected the arbitrator and both appeared at arbitration); *Vital Pharm. v. Pepsico, Inc.*, 528 F. Supp. 3d 1304, 1311 (S.D. Fla. 2020) (rejecting an objection to an arbitrator's jurisdiction where both parties participated in the arbitration); *Langlais v. Pennmont Benefit Servs.*, 527 F. App'x 215, 219 (3d Cir. 2013) (holding that a refusal to appear at an arbitration can waive objections raised only to "*procedural* issues concerning the arbitration," not jurisdictional objections) (emphasis added); *Your CBD Stores Franchising, LLC v. Buckwalter*, No. 8:23-cv-1550-VMC-AAS, 2023 WL 6676671, at *7 (M.D. Fla. Oct. 12, 2023) (rejecting a motion to vacate based on lack of notice—not lack of jurisdiction—because the parties were properly notified); *Spirit of the E., LLC v. Yale Prods., Inc.*, No. 22-13122, 2023 WL 2890013, at *1, 5 (11th Cir. Apr. 11, 2023) (confirming an award where all parties participated in the arbitration and no

party challenged the tribunal's jurisdiction); *Dean v. Sullivan*, 118 F.3d 1170, 1172 (7th Cir. 1997) (addressing an objection by a party who consented to and appeared at arbitration, but refused to participate in later sessions). Salomon's reliance on these cases also confuses the *tribunal's* jurisdiction over parties with the *district court's* personal jurisdiction over confirmation proceedings.

Salomon also argues that the district court should have deferred to the Florida Tribunal's interpretation of the Panama Agreement (br. 34). But Isaac did not agree to delegate questions of arbitrability or jurisdiction (or anything else) to the Beis Din of Florida. And the Final Award did not make any findings about personal jurisdiction, anyway. Even if it had, the confirming court has an independent obligation to determine its personal jurisdiction over the respondent. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1121 (9th Cir. 2002) ("neither the Convention nor its implementing legislation removed the district courts' obligation to find jurisdiction over the defendant in suits to confirm arbitration awards").

## II. Chapter 1, Section 9 of the FAA does not grant personal jurisdiction in proceedings to confirm an arbitration award under the Convention

The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") establishes a uniform framework for recognizing and enforcing international arbitration agreements and foreign arbitral awards. It applies to any award made in the territory of a foreign

state and to "non-domestic" awards rendered in the United States. 9 U.S.C. § 202. A parallel regime governs awards falling under the Inter-American Convention on International Commercial Arbitration ("Panama Convention"). The illegitimate final award issued by the Florida Tribunal is a nondomestic award subject to the Panama Convention.

The New York and Panama Conventions are "substantively identical." *Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*, 66 F.4th 876, 889 (11th Cir. 2023). The New York Convention is codified at Chapter 2 of the FAA (*see* 9 U.S.C. §§ 201–208), while the Panama Convention is codified (in substantively identical language) at Chapter 3 (*see* 9 U.S.C. §§ 301–307). This brief refers to the two conventions interchangeably as the "Convention."

Chapter 1 of the FAA governs domestic arbitrations. *See Suazo v. NCL (Bahamas) Ltd.*, 822 F.3d 543, 547 (11th Cir. 2016). Chapter 1 applies to confirmation of international awards only as a "gap-filler" where the Convention is inadequate. *Corporación AIC*, 66 F.4th at 886. As shown below, the Convention itself does not include a grant of personal jurisdiction and does not import a grant from Chapter 1 or anywhere else.

Salomon's brief misunderstands the Convention and its relationship to the FAA. His argument about a "straightforward" application of Chapter 1, section 9 of the FAA is anything but straightforward (br. 35). He selectively quotes section 9 as

providing that a district court shall "have jurisdiction" over the parties if "no court is specified in the agreement of the parties" (*see id.*). But by omitting the first sentence of Section 9—which requires consent to judicial confirmation in the parties' arbitration agreement—this selective quote renders section 9 incomprehensible.[4] The district court saw through this argument and rejected it (Doc. 92 at 39 (noting that Salomon's argument "ignores Section 9's first requirement")). As the district court explained, the jurisdictional grant on which Salomon relies is triggered only if "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . ." (*id.* at 38 (quoting 9 U.S.C. § 9)). The Panama Agreement does not consent to judicial confirmation.

As we explain below, Salomon's arguments for personal jurisdiction under Section 9 fail because (A) Chapters 2 and 3 of the FAA (codifying the Convention) preempt *all* of section 9, and the Convention leaves no gap for section 9 to fill; (B) Salomon cites no Convention case that relied on section 9 for personal jurisdiction;

[4] Section 9 is entitled, "Award of arbitrators; confirmation; jurisdiction; procedure." Its first sentence reads as follows: "*If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court,* then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."

and (C) Salomon's unpreserved due-process argument about the Fifth Amendment does not change the analysis.

### A. The Convention and its implementing legislation preempt section 9 of the FAA

The second sentence of Section 9 provides that "[i]f no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. Salomon contends that the Convention preempts only the consent-to-confirmation requirement in the first sentence of section 9 while incorporating the rest (br. 36). No court anywhere has adopted that partial-preemption theory. So Salomon relies on the text of sections 207 and 307 (implementing the New York and Panama Conventions, respectively) to argue that the absence of consent-to-confirmation language there eliminates the consent requirement from section 9 but adopts its grant of personal jurisdiction (br. 38–39). That argument makes no sense for two reasons.

First, section 9 of Chapter 1 of the FAA does not apply *at all* to confirmation of awards issued under the Convention. Chapter 1 of the FAA governs domestic arbitrations. *Suazo*, 822 F.3d at 547. It applies to international awards only as a "gap-filler" when the Convention is silent. *Corporación AIC*, 66 F.4th at 886. Unlike section 9, the Convention and its implementing provision, section 207, do not require party consent for confirmation and do not provide for personal jurisdiction based on consent. That is not a "gap" for section 9 to fill but a conflict

between the regimes, as Salomon's own authority recognizes. *See Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433, 437 n.3 (2d Cir. 2004) (noting that the "consent provision is only one of several differences between § 9 and" the Convention and holding that the Convention preempts section 9).

Second, Salomon's construction—that section 207 incorporates section 9's jurisdictional grant but not its consent-to-confirmation requirement—would erase the need to establish personal jurisdiction in all Convention cases. Salomon acknowledges as much, arguing that the district court erred in requiring him to "seek jurisdiction outside the FAA" (br. 44). But "Congress could no more dispense with personal jurisdiction in an action to confirm a foreign arbitral award than it could under any other statute." *First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 750 (5th Cir. 2012) (courts have a "responsibility to enforce those constitutional protections that guard a party from appearing in a forum with which it has no contacts"); *see also Glencore Grain Rotterdam*, 284 F.3d at 1121 ("It is a bedrock principle of civil procedure and constitutional law that a 'statute cannot grant personal jurisdiction where the Constitution forbids it.'") (citation omitted).

Thus, every circuit to address the issue has held that neither the Convention nor its implementing legislation establishes personal jurisdiction—whether by incorporating section 9 or otherwise. *See Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 212 (4th Cir. 2002) ("[W]hile the Convention

confers subject matter jurisdiction over actions brought pursuant to the Convention, it does not confer personal jurisdiction when it would not otherwise exist."); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 582 F.3d 393, 397 (2d Cir. 2009) (holding that the Convention "does nothing to alter the fundamental requirement of jurisdiction over the party against whom enforcement is being sought"); *Glencore Grain Rotterdam*, 284 F.3d at 1120–22 (holding that the Convention cannot override the due-process requirement to establish personal jurisdiction); *Telcordia Tech, Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 178–79 (3d Cir. 2006) ("the New York Convention does not diminish the Due Process constraints in asserting jurisdiction over a nonresident alien").

### B. None of the cases Salomon cites uses section 9 to assert personal jurisdiction in proceedings to confirm an arbitration award under the Convention

The district court noted that Salomon "cites to no controlling authority where a court dispensed with the consent-to-confirmation requirement in Section 9 and yet exercised personal jurisdiction under that same provision, whether in the context of a case arising under the Convention or otherwise" (Doc. 92 at 42). That remains true (*see* br. 39–43). His circuit-level cases hold that the Convention, through section 207, conflicts with and preempts section 9. None of them endorsed "partial" preemption or applied one portion of section 9 while ignoring another. And none relied on section 9 for personal jurisdiction. *See Phoenix*, 391 F.3d at 437–38

(holding that the Convention preempts section 9); *Stone & Webster, Inc. v. Triplefine Int'l Corp.*, 118 F. App'x 546, 549 (2d Cir. 2004) (disregarding section 9 in its entirety as preempted by section 207); *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 120 F.3d 583, 588–89 (5th Cir. 1997) (same); *First Kuwaiti Gen. Trading & Contracting W.L.L. v. Kellogg Brown & Root Int'l, Inc.*, 141 F.4th 522, 529 (4th Cir. 2025) (holding that a section 9 argument was "irrelevant" because chapter 2 of the FAA, not chapter 1, governs international awards).

Salomon also cites district-court cases (br. 41–42). The first is irrelevant because it involved a domestic arbitration, so section 9 obviously applied. *See PTA-FLA, Inc. v. ZTE USA, Inc.*, No. 3:11-cv-510, 2015 WL 12819186, at *5–6 (M.D. Fla. Aug. 5, 2015). The next two involved a foreign party but did not invoke (or even mention) the Convention and did not address the conflict between section 9 and section 207. *See Amazon.com, Inc. v. Glenn*, No. C18-1289, 2018 WL 5921005, at *2 (W.D. Wash. Nov. 13, 2018); *Hausman v. Earlswood Enters, Ltd.*, No. 95 Civ. 9088, 1996 WL 527335, at *5–6 (S.D.N.Y. Sep. 16, 1996). Moreover, as the district court noted, those cases did not state whether the agreement included a consent-to-confirmation provision that would justify reliance on section 9 (Doc. 92 at 42). Salomon's final case does not apply, either: it held that section 9 is preempted outright—not partially—and it did not apply one portion of section 9 while

disregarding another. *New Skies Satellites B.V. v. Gospel Ministries Int'l*, No. 1:15-CV-27, 2016 WL 11506970, at *3–4 (E.D. Tenn. Apr. 5, 2016).

### C. Salomon must satisfy the Fourteenth Amendment due-process and minimum-contacts tests

Salomon argues that the district court could exercise section 9 personal jurisdiction over Isaac without minimum contacts because where "personal jurisdiction rests on a federal statute, the Fifth Amendment applies," rather than the Fourteenth (br. 44). Salomon never raised his Fifth Amendment argument in the district court. Thus, he has waived it. His reliance on a recent Supreme Court case is no excuse. *See McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1496 (11th Cir. 1990) (rejecting an unpreserved argument despite an intervening Supreme Court case because the "general argument" was available at the time of trial).

Salomon's argument also fails because, since section 9 does not apply in Convention cases, no statutory basis for personal jurisdiction exists. *See supra*, § II.A–B. As noted above, no circuit court has ever based personal jurisdiction on section 9 in a case governed by the Convention. And every circuit to address the matter has required the petitioner to satisfy the minimum-contacts test. *See, e.g.*, *First Inv. Corp.*, 703 F.3d at 749 (in a confirmation proceeding under the Convention, the respondent's "contacts with a forum must be sufficient for the party to 'reasonably anticipate being haled into court there'").

But to be clear: even if Salomon had preserved the argument, and even if section 9 granted personal jurisdiction in cases arising under the Convention, the Fifth Amendment would still defeat the exercise of jurisdiction. In the case on which Salomon relies (br. 44), the Supreme Court did not hold that a statutory grant of jurisdiction is "unbounded." *Fuld v. P.L.O.*, 606 U.S. 1, 18 (2025). Rather, it addressed a statute that "ties jurisdiction to specific and narrow conduct that directly implicates issues of sensitive and ongoing concern in [foreign sovereigns'] relationships with the United States." *Id*. at 21. By contrast, Isaac is a private individual in a private dispute who has few contacts with the United States. The Fifth Amendment does not permit unlimited statutory personal jurisdiction over everyone in the world, particularly a foreign citizen without minimum contacts. *See id*. at 22 (upholding statutory jurisdiction over two terrorist groups because, "[f]ar from haling just any run-of-the-mill private defendant into American courts, the [statute] represents but one targeted aspect of a multifaceted foreign policy toward these two *sui generis* foreign entities . . .").

## III. The district court cannot exercise personal jurisdiction over Isaac based on Rule 4(k)(2)

Every year hundreds, if not thousands, of cases interpret the Convention. Yet Salomon cites no case under the Convention finding personal jurisdiction under Rule 4(k)(2). Salomon's argument fails because, as we show below, (A) the Supreme Court's *Daimler* due-process framework applies to Rule 4(k)(2) just as it does in

every case purporting to assert general personal jurisdiction; (B) the district court correctly found that Isaac's scant contacts with the United States do not satisfy due process; and (C) the Convention does not prohibit enforcement of the minimum-contacts standard.[5]

### A. The district court cannot exercise general personal jurisdiction over Isaac under Rule 4(k)(2) because Isaac is not "at home" in the U.S.

Salomon alleged only general jurisdiction—not specific jurisdiction—under Rule 4(k)(2) (Doc. 51 ¶ 40). Based on scattered "aggregate national contacts" spanning several decades, he argues that Isaac should be subject to jurisdiction in any federal court in any state in the country (br. 47). But the Supreme Court abandoned such broad theories more than a decade ago. *See Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (rejecting as "unacceptably grasping" the "exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'").

Under *Daimler*, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." 571 U.S. at 137. For an individual like Isaac, "the paradigm forum for the exercise of general jurisdiction is

[5] Supreme Court precedent forecloses Salomon's 4(k)(2) argument. Thus, section III(A) below addresses that issue first and refutes section III(C) of the initial brief. Because the initial brief's sections III(A) and III(B) are redundant (br. 47–55), we address both in section III(B). Section III(C) addresses Salomon's "treaty obligations" argument.

the individual's domicile." *Id.* It is undisputed that Isaac's domicile is Panama. Thus, Rule 4(k)(2) cannot be used (or abused) to assert jurisdiction over him. *See Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1338 n.9 (S.D. Fla. 2016) ("In the wake of the Supreme Court's decision in *Daimler*, it appears unlikely that general jurisdiction over a foreign defendant could ever be available under 4(k)(2)."); *Giuliani v. NCL (Bah.) Ltd.*, 558 F. Supp. 3d 1230, 1244 (S.D. Fla. 2021) (same).

Salomon argues that *Daimler*'s "stringent general jurisdiction test" does not apply to "a streamlined arbitration enforcement action" (br. 50). But he cites no case rejecting a *Daimler* analysis in these circumstances. Instead, he cites cases involving quasi-in-rem jurisdiction, where due-process concerns are diminished because a *court* has already decided liability. Jurisdiction is sought only to execute on the debtor's assets (br. 51) (citing *Shaffer v. Heitner*, 433 U.S. 186, 210 n.36 (1977)). The standards for quasi-in-rem jurisdiction, which focus on a particular state where a judgment debtor has assets, differ from the due-process concerns inherent in exercising personal jurisdiction on a defendant throughout the country (more on quasi-in-rem jurisdiction in Section IV below).

As the district court noted, to address those due-process concerns, courts "routinely apply *Daimler* to summary confirmation proceedings under the . . . Convention" (Doc. 92 at 22) (collecting cases). Salomon argues that its holding erroneously relies on one case that "provides little support for extending *Daimler*

into the fundamentally different context of a Convention enforcement action" (br. 52) (citing *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014)). But *Sonera Holding* is right on point: applying *Daimler's* general personal-jurisdiction analysis, it reversed confirmation of an arbitration award governed by the Convention. 750 F.3d at 225. And Salomon ignores the other case the district court cited, which also applied *Daimler* in this context. *See Sharp Corp. v. Hisense USA Corp.*, 292 F. Supp. 3d 157, 169–70 (D.D.C. 2017) (citing *Daimler* in a proceeding to enforce an interim award of a foreign tribunal).

Even Salomon's own authority (br. 53) contradicts his argument: although it found that the respondent was at home in Florida, it applied *Daimler* to do so. *See Sequip Participações S.A. v. Marinho*, No. 15-23737-MC, 2018 WL 10593628, at *6 (S.D. Fla. Oct. 16, 2018) (quoting *Daimler*, 571 U.S. at 139). His other cited case was decided before *Daimler* and did not address personal jurisdiction (br. 53 (citing *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 839 (11th Cir. 2011))).

Since *Daimler* applies in Convention confirmation proceedings, and since it restricts general personal jurisdiction to an individual's "domicile," the general jurisdictional grant of Rule 4(k)(2) cannot extend to Isaac, a resident of Panama.

### B. Even if Rule 4(k)(2) applied, Salomon did not allege sufficient contacts between Isaac and the United States that are connected to this dispute

Before *Daimler*, exercise of general personal jurisdiction under Rule 4(k)(2) was appropriate only where a defendant's contacts were "pervasive, continuous, and

systematic." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (explaining that to find a person "is subject to general personal jurisdiction under Rule 4(k)(2) would imply that the [defendant] is amenable to suit everywhere in the United States on any claim arising under federal law"). Those contacts also had to be directly connected to the dispute. *Id.* at 851 (holding that contacts were insufficient for jurisdiction under Rule 4(k)(2) because they had "only an attenuated causal connection" to the cause of action). Salomon describes Isaac's contacts with the United States as "multifaceted" (br. 47), but his list amounts to little, especially considering that these contacts span decades:

- Part ownership of a company that owns a vacation home in Florida (Doc. 58-1 at 3 ¶ 12);
- A bank account in New York (*id.* ¶ 17);
- Isolated vacation travel to the United States (*id.* ¶ 22);
- Donations to two synagogues—in Miami and Louisiana (*id.* ¶¶ 20–21);
- The e-publication of a book sold in the United States on Amazon, for which Isaac received a total of $146.92 in royalties (*id.* ¶¶ 10–11).

Salomon asserts that these contacts "collectively exceed the constitutional threshold" (br. 50). But the district court reviewed the undisputed evidence and found them "too attenuated, inconsistent, and frankly insignificant" (Doc. 92 at 37). That finding is not clearly erroneous. *Louis Vuitton Malletier*, 736 F.3d at 1350 ("If

the district court makes any findings of fact in reaching its personal jurisdiction conclusion, we review those fact findings for clear error.”).[6]

Moreover, Salomon does not even try to argue that this handful of contacts is connected to the underlying dispute (br. 50). That implicit concession is fatal. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017) (rejecting personal jurisdiction under Rule 4(k)(2) where the defendant's contacts with the United States could “only be described as scant, fleeting, and attenuated”); *easyGroup Ltd. v. Skyscanner, Inc.*, No. 20-20062-CIV, 2020 WL 5500695, at *17 (S.D. Fla. Sept. 11, 2020) (finding no personal jurisdiction under Rule 4(k)(2) because defendant's contacts were “too attenuated to relate to Plaintiff's claims in this case”).

### C. In a proceeding to confirm an arbitration award under the Convention, the exercise of personal jurisdiction (whether under Rule 4(k)(2) or any other ground) must satisfy due process

Salomon next argues that the Convention does not permit “imposing” a “minimum contacts requirement in arbitration enforcement proceedings”—this time in the context of Rule 4(k)(2) (br. 56). This is similar to amicus's argument (amicus

[6] No evidentiary hearing was required. The parties did not dispute the extent of Isaac's contacts; only whether they established personal jurisdiction. *See N. Am. Sugar Indus.*, 124 F.4th at 1333 (in deciding personal jurisdiction, a district court may decide facts by “constru[ing] all reasonable factual inferences in favor of the plaintiff to the extent that the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits”) (citation omitted).

br. 7–12), which Salomon apparently adopts. But Salomon did not raise it below. He has thus waived it. And his amicus cannot save him. *See Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1280 n.41 (11th Cir. 2012) (deeming an argument waived that was not made in an appellant's brief, even though it was made in an amicus brief).

But even if Salomon had preserved the argument, it fails. His citations to cases listing the seven enumerated defenses of Article V (br. 56–57) are irrelevant. Personal jurisdiction is not an Article V defense to enforcement. It is a threshold requirement for federal jurisdiction. *See First Inv. Corp.*, 703 F.3d at 748 ("[W]e hold, in accordance with the decision of every circuit to have considered this issue, that dismissal of a petition under the New York Convention for lack of personal jurisdiction is appropriate as a matter of constitutional due process."). And the requirement to decide personal jurisdiction is not a "procedural rule" that would "frustrate" the Convention (br. 57–58), but a substantive protection of rights "grounded in constitutional due process concerns." *Id.* at 750 (holding that the Convention cannot override a court's "responsibility to enforce those constitutional protections that guard a party from appearing in a forum with which it has no contacts").

Thus, nothing in the Convention eliminates the requirement that the court have personal jurisdiction over the defendant.

## IV. The district court cannot exercise quasi-in-rem jurisdiction over Isaac because he lacks minimum contacts with the forum

Salomon's final basis for exercising personal jurisdiction is quasi-in-rem. Under that type of jurisdiction, a judgment creditor may execute on assets the judgment debtor possesses in the state even if the judgment debtor does not reside there. *See World Wide Supply Ou v. Quail Cruises Ship Mgmt.*, 802 F.3d 1255, 1259–60 (11th Cir. 2015) ("'quasi-in-rem' proceedings . . . are actions against a party who is not personally present in the district but whose property is present"). Any judgment, however, will be limited to the value of those assets. *Shaffer*, 433 U.S. at 199 (1977) ("The effect of a judgment in [a quasi in rem] case is limited to the property that supports jurisdiction").

Salomon acknowledges that the exercise of quasi-in-rem jurisdiction must satisfy the minimum-contacts test (br. 59) (citing *Shaffer*, 433 U.S. 186). But he urges a dramatic expansion of what he describes as the "*Shaffer* exception" to dispense with due-process requirements. He cites a single footnote in a long Supreme Court opinion, which ultimately held that Delaware *lacked* jurisdiction to garnish the defendants' property in that state. *Shaffer*, 433 U.S. at 210 n.36.

As we explain below, (A) the *Shaffer* exception does not apply to unconfirmed arbitral awards because an arbitration tribunal is not a court of competent jurisdiction; (B) Salomon's cited authority does not support his argument; (C) an arbitral award is not equivalent to a judgment until a court confirms it and enters

judgment; and (D) Salomon's allegations about Isaac's assets are irrelevant to the issues on appeal.

**A. *Shaffer* does not create an exception to the minimum-contacts test for unconfirmed arbitral awards because an arbitral tribunal is not a "court of competent jurisdiction"**

The footnote on which Salomon relies suggests that a plaintiff need not satisfy the minimum-contacts test if "it has been determined by a *court of competent jurisdiction* that the defendant is a debtor of the plaintiff." *Shaffer*, 433 U.S. at 210 n.36 (emphasis added). By its terms, footnote 36 exempts only actions to enforce court judgments. Underlying the exception is an assumption that, when a court of competent jurisdiction renders a judgment, due-process requirements have already been satisfied. After all, deference to a foreign court of competent jurisdiction is appropriate only where "the foreign court proceedings are consistent with American notions of due process." *In re Braga*, 789 F. Supp. 2d 1294, 1308 (S.D. Fla. 2011). The same cannot be said for an arbitration award, since "[a]n arbitration hearing is not a court of law." *Hunt v. Mobil Oil Corp.*, 654 F. Supp. 1487, 1513 (S.D.N.Y. 1987); *see also Gov't Emps. Ins. v. Elkholy*, No. 21-16255 (MAS) (DEA), 2022 WL 2373917, at *9 (D.N.J. June 30, 2022) ("[A]rbitration is . . . not a court of competent jurisdiction").

In similar circumstances, the Supreme Court held that a "foreign or international tribunal" means a governmental entity. *See ZF Auto. US, Inc. v.*

*Luxshare, Ltd.*, 596 U.S. 619 (2022). In *ZF Auto*, the Supreme Court considered "whether the phrase 'foreign or international tribunal'" in a statute "includes private arbitral panels." *Id.* at 625. The Court noted that that the term "tribunal" "can be used as a synonym for 'court,' in which case it carries a distinctively governmental flavor." *Id*. at 627. It then held that a "foreign or international tribunal" is one "that exercises governmental authority." *Id.* at 633. Thus, private bodies such as arbitration panels cannot qualify. *Id.* The analysis of the *Shaffer* footnote is even simpler: a "court" must be a governmental body, so a private arbitration panel cannot be a "court of competent jurisdiction."

The text surrounding *Shaffer's* footnote 36 confirms this reading. The footnote follows a citation in the text to the Constitution's Full Faith and Credit Clause, which applies to "Acts, Records, and *Judicial Proceedings* of every other State." U.S. Const. art. IV § 1 (emphasis added); *see also Shaffer*, 433 U.S. at 210 ("The Full Faith and Credit Clause, after all, makes the valid in personam judgment of one State enforceable in all other States."). An international arbitration award is not a judgment from a state judicial proceeding. Indeed, in the context of the Full Faith and Credit *Statute*, the Supreme Court has confirmed that "arbitration is not a 'judicial proceeding,'" so an arbitration award is not entitled to full faith and credit. *McDonald v. City of W. Branch*, 466 U.S. 284, 288 (1984).

In another fit of hyperbole, Salomon asserts that federal courts "uniformly" treat arbitration panels as courts of competent jurisdiction for *Shaffer* purposes (br. 64). Yet, as the district court recognized (Doc. 92 at 47–49), *none* of Salomon's authorities supports that proposition. And the one appellate decision to address this issue in an international-arbitration context goes the other way. In *Base Metal Trading*, the Fourth Circuit acknowledged that *Shaffer* "eliminated all doubt that the minimum contacts standard in *International Shoe* governs *in rem* and *quasi in rem* actions as well as *in personam* actions." 283 F.3d at 213. The court declined to adopt Salomon's purported *Shaffer* exception. Instead, it held that a court asked to confirm a Convention award "must, therefore, examine whether [the petitioner] has alleged significant minimum contacts." *Id.* at 214.

### B. Salomon's authority does not hold that an arbitral tribunal is a "court of competent jurisdiction" under *Shaffer*

None of Salomon's cases supports dispensing with due process and minimum contacts in these circumstances. In fact, Salomon fails to cite a single case holding that an arbitration tribunal is a "court of competent jurisdiction" subject to the *Shaffer* exception (br. 58–68). Instead, he cites dictum from *Glencore Grain Rotterdam* (br. 60). In that case, the petitioner failed to identify any property in the forum. Thus, the Ninth Circuit never considered whether an arbitral tribunal is a court of competent jurisdiction. 284 F.3d at 1127–28.

Salomon's unpublished district-court cases are similarly unhelpful. In fact, several emphasize that only *court* judgments are subject to the *Shaffer* exception. *See, e.g.*, *Cerner Middle E. Ltd. v. iCapital, LLC*, 939 F.3d 1016, 1020 (9th Cir. 2019) (holding that quasi-in-rem jurisdiction was proper because "a decision by the Paris Court" had confirmed that the arbitrator had jurisdiction); *Gov't of the Lao People's Democratic Republic v. Baldwin*, No. 2:20-cv-00195-CRK, 2021 WL 5435114, at *7 (D. Idaho Nov. 19, 2021) (finding that the petitioner "has not satisfied the first requirement of quasi-in-rem jurisdiction that a court of competent jurisdiction has determined that Baldwin and Bridge are Lao PDR's debtors"); *Equipav S.A. Pavimentação, Engenharia e Comercio Ltda. v. Bertin*, No. 22 Civ. 4594 (PGG), 2024 WL 196670, at *7 (S.D.N.Y. Jan. 18, 2024) (applying the *Shaffer* exception to a court's attachment order). As the district court noted, when an arbitral award has already been converted into a judgment, applying the *Shaffer* exception "aligns with the reasoning articulated in *Shaffer* itself . . . . [T]his is predicated on the view that when a court with jurisdiction over parties and their dispute renders a judgment, Due Process concerns have already been satisfied" (Doc. 92 at 49).

Salomon's remaining cases (br. 60–63) do not define a "court of competent jurisdiction." Rather, each *assumed* that due-process requirements were satisfied because the arbitral tribunal's personal jurisdiction over the parties was undisputed. *See Equipav*, 2024 WL 196670, at *7; *CME Media Enters. B.V. v. Zelezny*, No. 01

Civ. 1733 (DC), 2001 WL 1035138, at *3 (S.D.N.Y. Sep. 10, 2001); *Crescendo Mar. Co. v. Bank of Commc'ns. Co.*, No. 15 Civ. 4481 (JFK), 2016 WL 750351, at *5 (S.D.N.Y. Feb. 22, 2016); *La Dolce Vita Fine Dining Co. v. Zhang*, No. 21-cv-3071 (LAIC), 2023 WL 1927827, at *2 (S.D.N.Y. Feb. 10, 2023); *Inzajat Tech. Fund, B.S.C. v. Najafi*, No. C11-04133, 2012 U.S. Dist. LEXIS 32068, at *5 (N.D. Cal. Mar. 9, 2012). Here, by contrast, Isaac has consistently disputed the Florida tribunal's jurisdiction.

### C. An arbitral award is not the same as a judgment from a court of competent jurisdiction

Salomon argues that a final arbitral award is the "functional equivalent of a judgment" and that such an award allows the court to assert in rem jurisdiction without satisfying minimum-contacts requirements (br. 64–66). This argument simply repackages his earlier one that an arbitral tribunal is a court of competent jurisdiction. But it should not be controversial that a judgment is different from an arbitral award: a judgment is issued by a court and is immediately executable within that court's jurisdiction; an arbitral award is not. *See Corporación AIC*, 66 F.4th at 882 ("Confirmation is the process by which an arbitration award is converted to a legal judgment") (quoting *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 875 (D.C. Cir. 2021)). If the two were the same, a confirmation proceeding would be superfluous, and Salomon would never have filed his Petition.

That distinction explains why cases applying the *Shaffer* exception to arbitrations involve awards that have been confirmed elsewhere—that is, where a "court of competent jurisdiction" has concluded that "the defendant is a debtor of the plaintiff." *Shaffer*, 433 U.S. at 210 n.36; *see, e.g.*, *Equipav*, 2024 WL 196670, at *18–19, 23 (applying the exception because the award had been confirmed in the primary jurisdiction). In short, an arbitral tribunal is not a court, and a final award is not a judgment. Neither allows a federal court to dispense with due process or the minimum-contacts analysis when asked to exercise quasi-in-rem jurisdiction.

### D. Salomon's allegations about Isaac's assets in Florida are not grounds to reverse the Order

Salomon spends pages describing Isaac's few Florida assets and arguing that they are sufficiently identified to support quasi-in-rem jurisdiction (br. 66–68). The district court declined to exercise quasi-in-rem jurisdiction because Salomon failed to allege sufficient minimum contacts between Isaac and Florida—not because he failed to identify assets (Doc. 92 at 51). Salomon's argument is thus irrelevant to his appeal. *See Schafler v. Summer*, 783 F. App'x 932, 934 (11th Cir. 2019) ("The failure to address the district court's reasoning is fatal to Schafler's appeal.").

## V. A district court cannot confirm an arbitral award without personal jurisdiction over the respondent

As we have demonstrated in the previous sections, even in actions to confirm arbitration awards, a district court must have personal jurisdiction over the

respondent. In fact, Salomon's Petition alleged personal jurisdiction, he never disputed his burden to establish it, and he does not challenge that requirement on appeal (*see* br. 1–2). But the amicus brief apparently seeks reversal based on a groundless (and unpreserved) new argument: that the FAA and the Convention do not allow for any evaluation of personal jurisdiction at all because it is not one of the five defenses to enforcement under Article V of the Convention (amicus br. 7–12; 20–26). The Court should reject this argument because Salomon did not preserve it below. It was raised for the first time by amicus. *See Univ. of Ala. Bd. of Trs.*, 683 F.3d at 1280 n.41 (holding that the appellant waived an argument made by amicus).

In any event, the amicus is wrong. As we have shown over the last 46 pages, courts uniformly hold that the "Convention does not abrogate the due process requirement that jurisdiction exist over the Defendant's person or property." *See, e.g., Glencore Grain Rotterdam*, 284 F.3d at 1122 ("Interpreting the FAA to dispense with the jurisdictional requirements of Due Process in actions to confirm arbitral awards would raise clear questions concerning the constitutionality of the statutes.").

The amicus offers no authority allowing a court to consider a confirmation petition under the Convention without deciding its personal jurisdiction over the respondent. Its argument misreads the law. *See Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021) (for statutory personal jurisdiction, "the

court must determine that the exercise of jurisdiction comports with due process."); *Telcordia*, 458 F.3d at 178–79 ("the New York Convention does not diminish the Due Process constraints in asserting jurisdiction over a nonresident alien").

## CONCLUSION

This case involved a settlement among four siblings and their entities, all Panamanian citizens, over assets located in Panama, involving a contract executed in Panama, and which identified an arbitration tribunal in Panama. Appellee Isaac Btesh's attenuated contacts with Florida and, more broadly, the United States, do not justify asserting jurisdiction over a petition to confirm an illegitimate arbitration award rendered in Florida without Isaac's participation. Thus, Isaac respectfully requests that the Court affirm the order dismissing the Amended Petition for lack of personal jurisdiction.

Dated: December 12, 2025

Respectfully submitted,

**WHITE & CASE LLP**

*/s/ Raoul G. Cantero*
Raoul G. Cantero
Florida Bar No. 552356
James N. Robinson
Florida Bar No. 608858
Zachary B. Dickens
Florida Bar No. 98935
W. Dylan Fay
Florida Bar No. 125673
Southeast Financial Center
200 South Biscayne Boulevard
Suite 4900
Miami, Florida 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
E-mail: rcantero@whitecase.com
E-mail: jrobinson@whitecase.com
E-mail: zdickens@whitecase.com
E-mail: wfay@whitecase.com

*Counsel for Appellee Isaac Btesh*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 11,663 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and the Local Rules of this Court.

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally based typeface using Word for Microsoft 365 in 14-point Times New Roman Font.

*/s/ Raoul G. Cantero*
Raoul G. Cantero

**CERTIFICATE OF SERVICE**

**I CERTIFY** that on this 12th day of December, 2025, the foregoing was electronically filed through this Court's CM/ECF system and a copy was electronically served through the CM/ECF system on all registered counsel of record.

By: *\/s\/ Raoul G. Cantero*
Raoul G. Cantero