**No. 25-11265**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

SALOMON BTESH,

*Petitioner-Appellant,*

v.

ISAAC BTESH

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Florida

No. 1:23-cv-23679-JB

---

# APPELLANT'S REPLY BRIEF

---

Edward M. Mullins
Daniel Alvarez Sox
Reed Smith LLP
200 S. Biscayne Blvd Ste 2600
Miami, FL 33131
Tel.: 786-747-0200

Carlos F. Concepcion
Concepcion Global PLLC
200 S. Biscayne Blvd Ste 2800
Miami, FL 33131
Tel: 305-444-6669

*Counsel for Petitioner-Appellant
Salomon Btesh*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 26.1-2, Appellant Salomon Btesh submits herein his certificate of interested persons:

### I. District Judge(s)

Becerra, Hon. Jacqueline – U.S. District Judge

### II. Parties and Related Entities

Banco de Bogota

Bayer, Neil

Beis Din of Florida

Botta Espinosa, Alfredo

Bresler, Rabbi Moshe Y.

Btesh, Salomon - Petitioner-Appellant

Btesh, Isaac - Respondent-Appellee

Btesh, Deborah

Btesh de Michaan, Raquel

Btesh de Snaider, Yvonne

Dickens, Zachary Brian

Eskenazi Cohen, Jack

Feiler, Jeffrey

Fundación Aryisa

Fundación Joyvon

Grupo Aval

Hernandez Correa, Gerardo

Josilowsky, Rabbi Yosef David

Lerner, Rabbi Meir Simcha

Markstein, Rabbi David

Miara, Rabbi Doron

Reinhard, Sanford N.

Rodes, Timothy

Mizrachi, David M.

NMB Aventura Realty, Inc.

Peretz, Rabbi David

Notis, Rabbi Avraham E.

## III. Conglomerates, Affiliates, Parent Corporations, Publicly Held Corporations Owning 10% or More of a Party's Stock, and Other Identifiable Legal Entities Related To A Party.

None.

## IV. Attorneys, Persons, Associations of Persons, Firms, or Partnerships

Cantero, Raoul G. – Counsel for Respondent/Appellee

Concepcion Global PLLC – Law Firm for Petitioner/Appellant

Concepcion, Carlos Francisco - Counsel for Petitioner/Appellants

Mullins, Edward M. – Counsel for Petitioner/Appellants

Reed Smith LLP – Law Firm for Petitioners/Appellant

Robinson, James N. - Counsel for Respondent/Appellee

Sox, Daniel Alvarez – Counsel for Petitioner/Appellant

White & Case LLP – Law Firm for Respondent/Appellee

**TABLE OF CONTENTS**

**Page**


ARGUMENT .......... 4

I. THE PARTIES CONSENTED TO THE DISTRICT COURT'S JURISDICTION BY AGREEING THAT HALACHIC LAW WOULD GOVERN THEIR DISPUTES .......... 4

A. Halachic Law Establishing Respondent's Consent to District Court's Jurisdiction Was Undisputed Under the Panama Agreement .......... 4

B. Isaac Waived his Objection to Personal Jurisdiction by Refusing to Appear Before the Tribunal. .......... 10

II. Section 9 Supplies a Valid and Independent Jurisdictional Basis in Convention Proceedings .......... 12

III. Rule 4(k)(2) Provides Personal Jurisdiction for Convention Enforcement Proceedings .......... 17

IV. THE DISTRICT COURT ERRED IN REFUSING TO EXERCISE *QUASI IN REM* JURISDICTION .......... 24

A. The *Shaffer* Exception Eliminates Any Minimum-Contacts Requirement .......... 24

B. The Panel Qualifies as a "Court of Competent Jurisdiction" Under *Shaffer* .......... 27

C. Isaac's Florida Assets Satisfy the Factual Predicate for *Quasi in Rem* Type II Jurisdiction .......... 33

CONCLUSION .......... 34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bamberger Rosenheim, Ltd. (Isr.) v. OA Dev., Inc.*,
862 F.3d 1284 (11th Cir. 2017) .......... 11

*Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory*,
283 F.3d 208 (4th Cir. 2002) .......... 14, 30

*In re Braga*,
789 F. Supp. 2d 1294 (S.D. Fla. 2011) .......... 30

*Cat Charter, LLC v. Schurtenberger*,
646 F.3d 836 (11th Cir. 2011) .......... 21

*Cerner Middle East Ltd. v. iCapital, LLC*
2021 U.S. Dist. LEXIS 205146 (D. Or. Oct. 24, 2021) .......... 28

*CME Media Enters. B.V. v. Zelezny*,
No. 01 Civ. 1733 (DC), 2001 U.S. Dist. LEXIS 13888 (S.D.N.Y. Sept. 10, 2001) .......... 28, 29

*Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A*,
66 F.4th 876 (11th Cir. 2023) (en banc) .......... 4, 25, 29, 33

*Crescendo Mar. Co. v. Bank of Communs. Co.*,
2016 U.S. Dist. LEXIS 21824, 2016 WL 750351 (S.D.N.Y Feb. 22, 2016) .......... 29

*D'Ivoire v. MRS Holdings Ltd.*,
No. 24-cv-80363-MIDDLEBROOKS, 2024 LEXIS 288982 (S.D. Fla. Dec.18, 2024) .......... 27

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 18, 19, 21, 24

*Dean v. Sullivan*,
118 F.3d 1170 (7th Cir. 1997) .......... 10

*Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*,
998 F.3d 449 (D.C. Cir. 2021) .................................................. 7

*Equipav S.A. Pavimentação, Engenharia e Comercio Ltda. v. Bertin*,
2024 WL 196670 (S.D.N.Y. Jan. 18, 2024) ......................................... 29

*Fid. Nat'l Fin. v. Friedman*,
935 F.3d 696 (9th Cir. 2019) ...................................................... 26

*Fils et Cables D'Acier de Lens v. Midland Metals Corp.*,
584 F. Supp. 240 (S.D.N.Y. 1984) .................................................. 8

*Finan v. Lafarge S.A.*,
No. 22-CV-7831 (NGG) (PK), 2025 U.S. Dist. LEXIS 172784 (E.D.N.Y. Aug. 29, 2025) ....................................................... 20

*First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*,
703 F.3d 742 (5th Cir. 2012) ...................................................... 23

*First Kuwaiti Gen. Trading & Contracting W.L.L. v. Kellogg Brown & Root Int'l, Inc.*,
141 F.4th 522 (4th Cir. 2025) ..................................................... 13

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ................................................................ 6

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025) ......................................................... 15, 16, 17, 20

*Gherardi v. Citigroup Glob. Mkts., Inc.*,
975 F.3d 1232 (11th Cir. 2020) .................................................... 11

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002) .......................................... 14, 27, 28, 33

*Gov't Emps. Ins. Co. v. Elkholy*
2022 WL 237917 (D.N.J. June 30, 2022) ...................................... 31, 32

*Government of the Lao People's Democratic Republic v. Baldwin*
2021 U.S. Dist. LEXIS 224212 (D. Idaho Nov. 19, 2021)..................28

*Gulfstream Aero. Corp. v. Oceltip Aviation 1 PTY LTD*,
31 F.4th 1323 (11th Cir. 2022) ............................................................8

*Hicks v. Bank of Am.*,
218 F. App'x 739 (10th Cir. 2007)......................................................10

*Hunt v. Mobil Oil Corporation*,
654 F. Supp. 1487 (S.D.N.Y. 1987)......................................................31

*Inzajat Tech. Fund, B.S.C. v. Najafi*,
No. C11-04133, 2012 U.S. Dist. LEXIS 32068 (N.D. Cal. Mar. 9, 2012)..........................................................................30

*Jekyll Island–State Park Auth. v. Polygroup Macau Ltd.*,
140 F.4th 1304 (11th Cir. 2025) .......................................... 18, 19, 20

*King v. Bon Charge*,
No. 25-cv-00105-SB, 2025 U.S. Dist. LEXIS 267318 (D. Del. Dec. 30, 2025) ..........................................................................19

*La Dolce Vita Fine Dining Co. v. Zhang*,
No. 21-cv-3071, 2023 U.S. Dist. LEXIS 23196 (S.D.N.Y. Feb. 10, 2023).........................................................................30

*Martinez v. Carnival Corp.*,
744 F.3d 1240 (11th Cir. 2014)............................................................7

*McDermott Int'l, Inc. v. Lloyds Underwriters of London*,
120 F.3d 583 (5th Cir. 1997)..............................................................13

*Medrite Care, LLC v. Medirte 243 LLC*,
2020 U.S. Dist. LEXIS 122496 (S.D.N.Y. Jul. 13, 2020)......................9

*Office Depot, Inc. v. Zuccarini*,
596 F.3d 696 (9th Cir. 2010)..............................................................26

*Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*,
No. 1:24-cv-00744 (JLR), 2025 WL 3022826 (S.D.N.Y. Oct. 29, 2025) .......... 16

*Parnell v. CashCall, Inc.*,
804 F.3d 1142 (11th Cir. 2015) .......... 7

*Phoenix Aktiengesellschaft v. Ecoplas, Inc.*,
391 F.3d 433 (2d Cir. 2004) .......... 13

*Powell v. Sch. Bd.*,
86 F.4th 881 (11th Cir. 2023) .......... 17

*Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*,
582 F.3d 393 (2d Cir. 2009) .......... 14

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974) .......... 25, 33

*Shaffer v. Heitner*,
433 U.S. 186, 210 n.36 (1977) .......... *passim*

*Shopmen's Loc. 539 v. Mosher Steel*,
796 F.2d 1361 (11th Cir. 1986) .......... 10

*Siegel v. Milstein*,
2021 U.S. Dist. LEXIS 210561 (E.D.N.Y. Nov. 1, 2021) .......... 9

*Smarthealth Inc. v. Chemotechnique MB Diagnostics AB*,
2025 U.S. Dist. LEXIS 115063 (D. Ariz. Jun. 17, 2025) .......... 22

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) .......... 9

*Telcordia Tech Inc. v. Telkom SA Ltd.*,
458 F.3d 172 (3d Cir. 2006) .......... 14

*Vedanta Biosciences Inc. v. Seres Therapeutics Inc.*,
2025 U.S. Dist. LEXIS 234596 (D. Del. Dec. 2, 2025) .......... 22

*Vital Pharm. v. PepsiCo, Inc.*,
528 F. Supp. 3d 1304 (S.D. Fla. 2020) .... 10

*Weststar Assocs., Inc. v. Tin Metals Co.*,
752 F.2d 5 (1st Cir. 1985) .... 5

*ZF Auto. US, inc. v. Luxshare, Ltd.* .... 32

**Statutes**

9 U.S.C. § 9 .... *passim*

9 U.S.C. § 207 .... 13

9 U.S.C. § 208 .... 12, 13

9 U.S.C. § 307 .... 13

28 U.S.C. § 1782 .... 32

**Rules**

Fed. R. Civ. P. 4(k)(2) .... *passim*

**Other Authorities**

N.Y. Conven. Art. V(1)(a)-(e) .... 25

Panama Conven Art. 4 .... 25

Panama Conven. Art. 5(1)(a)-(e) .... 25

## INTRODUCTION

This appeal presents a substantial question involving the Panama Convention (and by extension the New York Convention) and the Federal Arbitration Act: may a federal district court in the primary jurisdiction refuse to confirm an international arbitral award rendered in that district for lack of personal jurisdiction over a party who had notice of that arbitration but chose not to appear?

The material facts are undisputed. Appellee Isaac Btesh ("Issac") received notice of the international arbitration that was seated in Miami, Florida, and intentionally declined to participate. The uncontroverted record shows that he could have appeared and contested the tribunal's jurisdiction. In his deposition, Issac testified that he received the three Halachic summonses to the arbitration, discussed them with his Panama counsel, and elected not to participate in the arbitration seated in Miami Florida. The tribunal then proceeded and entered a final arbitral award. When Appellee Salomon Btesh (Salomon") sought confirmation in the district where the award was rendered—the primary jurisdiction under the Convention—the court held that it lacked personal jurisdiction and that the award would have to be confirmed somewhere else – ironically,

in what clearly would be a secondary jurisdiction.

The district court's conclusion conflicts with the structure of the Panama Convention, the text of Section 9, the consent embodied in the parties' agreement and the Halachic framework they adopted, and the settled principles governing post-award enforcement. Personal jurisdiction existed on multiple independent grounds, including consent, statutory authorization, nationwide jurisdiction under Section 9 and Rule 4(k)(2), and *quasi in* rem enforcement of Florida assets.

If affirmed, this decision would make this Circuit the first to endorse the proposition that a federal district court in the arbitral seat lacks personal jurisdiction to confirm the arbitral award entered in that primary jurisdiction. The practical message to future parties would be unmistakable: ignore an international arbitration after receiving and acknowledging actual notice of the proceedings, decline to contest jurisdiction before the tribunal, and later argue that the award entered *in absentia* cannot be confirmed for lack of personal jurisdiction. Because the district court misapplied governing doctrine and stripped the court of primary jurisdiction of its authority to confirm the award rendered in its own district, the Order on Appeal should be reversed.

## REPLY STATEMENT OF THE CASE

Issac's statement of the case contains numerous inaccuracies but a few warrant special attention.

Issac claims he was not properly served with notice of the arbitration, Resp. at 2. However, there is no question he received actual notice of the arbitration proceedings and, after discussions with counsel, elected to ignore the summonses and refused to appear. DKT63-5 at 96-97, 85-89. Furthermore, contrary to Issac's assertions, the Tribunal in fact determined that it had jurisdiction over the matter, including the parties. DKT.51-1 at 13. Similarly, contrary to Issac's statement, Resp. at 1, the parties' agreement did not identify Panama as the seat. The clause stated that arbitration would be the "alternative dispute resolution methods in effect for members of the Israeli Charitable Society Shevet Ahim," but did not require a Panama seat. DKT51-1 at 24(¶16). It is simply not true that the "methods in effect" require a seat in Panama, as the Tribunal found the clause and Halachic law allows jurisdiction in "the Beis Din that issues the summonses." DKT51-1 at 3. Yet, following his failed logic, Issac nonetheless claims that Panama was the primary jurisdiction, Resp. at 7, because he erroneously contends that the parties

agreed to conduct the arbitration in Panama. That is completely wrong; the primary jurisdiction is Miami, the place where the award was entered. DKT.51; s*ee Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A*, 66 F.4th 876, 880 (11th Cir. 2023) (en banc).

## ARGUMENT

## I. THE PARTIES CONSENTED TO THE DISTRICT COURT'S JURISDICTION BY AGREEING THAT HALACHIC LAW WOULD GOVERN THEIR DISPUTES

The Panama Agreement adopted Halachic law to govern the parties' disputes. Under Halachic law, confirmation lies in the courts presiding where the Beis Din renders its award. By selecting that governing framework, the parties consented to enforcement in the arbitral seat. Isaac's contrary argument rests on authorities addressing express incorporation of third-party arbitral rules—not the adoption of a governing legal system—and ignores unrebutted expert testimony establishing Halachic consent.

### A. Halachic Law Establishing Respondent's Consent to District Court's Jurisdiction Was Undisputed Under the Panama Agreement

As Salomon argued, Halacha law establishes that the parties give their consent to the enforcement of an arbitration award by the

appropriate courts located where the Halachic tribunal enters the arbitral award. Init. at 21-23. Rather than engage in the substance of Halachic law, Isaac dismisses the argument with mere rhetoric. Resp. at 15.

Isaac argues the parties' arbitral clause makes no explicit reference to the rules other than the dispute resolution methods used by members of the Israeli Charitable Society Shevet Ahim. Resp. at 15-16. Yet, the Panama Agreement did more than reference dispute-resolution methods; it adopted Halachic law to govern the substantive and procedural resolution of disputes. The Beth Din Rules codify that law. By agreeing to Halachic law as the governing framework, the parties accepted its procedural consequences, including confirmation in the seat of the award. *See Weststar Assocs., Inc. v. Tin Metals Co.*, 752 F.2d 5 (1st Cir. 1985).

To avoid this law, Isaac mischaracterizes Rabbi Lerner's opinion. Pursuant to Halachic law, Issac consented to and waived any right to challenge the district court's personal jurisdiction over him. Lerner opined, "[A] party who is bound (either affirmatively or by waiver) **to Halachic Law and/or the Beth Din Rules and Procedures** consents and waives any challenge to the personal jurisdiction of any Federal or

state court having jurisdiction over the subject matter—namely the enforcement of the arbitration award." DKT.63-1¶14 (emphasis added). Further, "[u]nder Halachic Law, 'jurisdiction' extends to the courts presiding in the place where the awarding Beis Din is located, in this case, Miami." DKT.63-1¶15 (emphasis added). Salomon raised this testimony in his brief, Init. at 22, but Isaac ignores it.

With respect to whether the tribunal or the district court had jurisdiction to address the issue of arbitrability, the tribunal held that it had that power. Isaac is correct that the Supreme Court in *First Options* did indeed say that courts should not assume arbitrability was submitted to the tribunal unless there was "clear and unmistakable" evidence that they did so. Resp. Brief at 17 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). However, it is incorrect to say that no such intent was shown here. Arbitrability was delegated to the arbitrator, not just under the rules of the tribunal, but the Panama Agreement itself, which the clause Isaac quotes shows. Resp. at 18. When, as here, "any difference or dispute as to the performance, interpretation, execution, and/or scope of this document" is submitted to the arbitral tribunal, that satisfies the "clear and unmistakable"

standard. *See, e.g, Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015); *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1245 (11th Cir. 2014).

Isaac's arguments relating to the Panama Agreement also are inaccurate and encourage this Court to render language in the agreement superfluous. Resp. at 21-22. The Panama Agreement does not say that the disputes are referred to *Shevet Ahim*, as Isaac claims. Resp. at 21-22. Instead, it states the parties submit to the "alternative dispute resolution **methods in effect** for members of the Israeli Charitable Society Shevet Ahim." Resp. Brief at 18 (emphasis added). Therefore, if a Beth Din is a valid forum for arbitration in effect for members of the *Shevet Ahim*, then the Beth Din is a valid forum. Isaac's reliance on *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, is misguided as the decision simply involved a clause that only mentioned the American Arbitration Association as a third-tier back up for the selection of the Arbitrator. 998 F.3d 449, 462 (D.C. Cir. 2021). In contrast, the language in the Panama Agreement adopted Halachic Law as the district court found. *See* DKT.92 at 4 (parties "appear to agree that it contemplated proceedings before a rabbinical court known as a Beit

Din or Beis Din, which adjudicates matters according to Jewish law."). Isaac confirmed the same below. DKT25-1 ¶28 (attesting that the "only alternative dispute resolution methods in effect for members of [Shevet Ahim]" include "mediation and arbitration before a Rabbinical court").

Isaac's remaining authorities address materially different issues. For example, in *Gulfstream Aero. Corp. v. Oceltip Aviation 1 PTY LTD*, Resp. at 15-16, the issue was whether a state choice-of-law rule meant that the arbitration statute displaced the FAA—not whether adoption of a governing arbitral framework carries consent to confirmation in the seat. 31 F.4th 1323, 1325 (11th Cir. 2022). Here, there is no conflict between Halachic law and the FAA. And in any event, Halachic law, itself, locates confirmation in the courts where the Beis Din renders its award—here, Miami.

Nor do Isaac's other authorities advance his position. Resp. at 13. One addressed whether the parties by agreement could alter the court's role in arbitration, not whether adoption of a governing arbitral framework carries consent to confirmation. *See Fils et Cables D'Acier de Lens v. Midland Metals Corp.*, 584 F. Supp. 240, 243-43 (S.D.N.Y. 1984). Another rejected inferring class-wide arbitration from a bare agreement

to arbitrate; it did not concern the adoption of arbitral rules or governing legal systems. *See Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010). Nowhere in the opinion does the court address referring to arbitral rules. The court held only that it cannot be presumed that parties consented to class-wide arbitration "by simply agreeing to submit their disputes to an arbitrator." *Id.* Neither decision bears on whether selecting Halachic law carries its procedural consequences.

Isaac also invokes *Medrite* and *Siegel* to argue that the parties must have agreed to a particular Beis Din. Resp. at 19. Those cases, however, involved disputes over whether the parties had agreed to arbitrate before any rabbinical tribunal at all. *See Medrite Care, LLC v. Medirte 243 LLC*, 2020 U.S. Dist. LEXIS 122496 (S.D.N.Y. Jul. 13, 2020) (declining to compel arbitration where the parties did not have an arbitral agreement, as they disputed whether they had agreed to a "particular beth din" in rabbinical law); *Siegel v. Milstein*, 2021 U.S. Dist. LEXIS 210561 at *9-10 (E.D.N.Y. Nov. 1, 2021) (addressing competing interpretations of whether the parties agreed to arbitrate before a specific rabbinical tribunal). Here, by contrast, no one disputes that the parties agreed to rabbinical arbitration under Halachic law; the only question is the

procedural consequence of that agreement—namely, confirmation in the arbitral seat.

### B. Issac Waived his Objection to Personal Jurisdiction by Refusing to Appear Before the Tribunal.

Issac's failure to challenge the Arbitral Tribunal's jurisdiction waived his ability to challenge that jurisdiction in subsequent confirmation proceedings, as this Court and others have recognized. *See Shopmen's Loc. 539 v. Mosher Steel,* 796 F.2d 1361, 1365 (11th Cir. 1986) (failure to challenge arbitrator's ruling precludes raising in enforcement); *Hicks v. Bank of Am.*, 218 F. App'x 739, 746 (10th Cir. 2007) (waiver where objection not raised before arbitrator); *Vital Pharm. v. PepsiCo, Inc.,* 528 F. Supp. 3d 1304, 1310 (S.D. Fla. 2020) (same). The same principle applies when the challenging party fails to appear before the tribunal at all. *Dean v. Sullivan*, 118 F.3d 1170, 1172 (7th Cir. 1997) (refusing to appear in arbitration and attacking composition in court is "sandbagging").

There is no dispute that Isaac received notice of this arbitration. He discussed the issue with his Panama counsel and strategically chose to not appear or object to the arbitral tribunal's jurisdiction. Under Halachic Law, a party cannot simply ignore the notices of a duly

constituted tribunal. *See* DKT.63-1 ¶¶10–11.

To excuse his refusal to appear, Isaac argues that it would have been unreasonable for him to appear before the Arbitral Tribunal to contest its jurisdiction because he claims doing so would have waived his personal jurisdiction objections to the tribunal and the district court. He is wrong. The record shows he could have objected to the tribunal's jurisdiction and that the objection would have been considered. *See* DKT.63-1 ¶¶10–12.

The district court substituted its own judgment for that of the Tribunal on issues the parties delegated to the Tribunal—jurisdiction and the arbitral seat—despite Issac's decision not to appear before the tribunal. Such judicial reweighing exceeds the limited role courts play at the confirmation stage. *Bamberger Rosenheim, Ltd. (Isr.) v. OA Dev., Inc.*, 862 F.3d 1284, 1288 (11th Cir. 2017) (review of arbitrator's venue determination "is limited to 'whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong'") (citation omitted); *Gherardi v. Citigroup Glob. Mkts., Inc.*, 975 F.3d 1232, 1237 (11th Cir. 2020) (same).

Allowing a party to ignore an arbitration after notice and later

collaterally attack the tribunal's jurisdiction in confirmation proceedings would undermine the core purpose of arbitration.

## II. Section 9 Supplies a Valid and Independent Jurisdictional Basis in Convention Proceedings

Isaac's treatment of Section 9 proceeds on a different premise than the one this appeal presents. Instead of addressing whether and how Section 9 operates after severance of its conflicting consent clause, Isaac reframes the issue by advancing three premises: he recasts the issue as an "all-or-nothing" question of whether Chapter 1 applies at all in Convention cases (of course it does); he treats the absence of prior applications of Section 9 as dispositive (in reality, few litigants contest personal jurisdiction to confirm an award in the arbitral seat); and he portrays Salomon's Fifth Amendment analysis as an effort to create boundless jurisdiction, which is untrue. Isaac further ignores that he could have appeared at the arbitration proceedings and objected to the Tribunal's jurisdiction, as noted in Appellant's initial brief. Each premise is mistaken.

*First*, Isaac's preemption argument turns Sections 208 and 307 on their head. Those provisions do not erase Chapter 1 wholesale; they preserve it except "to the extent" it conflicts with the Convention. 9

U.S.C. §§ 208, 307. Courts applying the Convention have severed the specific portions of Section 9 that conflict with Section 207's confirmation regime—most notably the consent-to-confirmation clause—while leaving the remainder of the statute intact. *See Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433, 436–38 (2d Cir. 2004); *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 120 F.3d 583, 588–89 & n.12 (5th Cir. 1997); *First Kuwaiti Gen. Trading & Contracting W.L.L. v. Kellogg Brown & Root Int'l, Inc.*, 141 F.4th 522, 529 (4th Cir. 2025). None of those decisions holds that Section 9's jurisdictional sentence—providing that once notice is served "the court shall have jurisdiction of such party as though he had appeared generally in the proceeding"—is inconsistent with the Convention. *Phoenix*, for example, did not hold that the Convention preempts the entirety of Section 9. 391 F.3d at 436-38. Isaac's position that severance must be total finds no support in the statutory text, which mandates targeted displacement, not wholesale demolition. *See* 9 U.S.C. §§ 208, 307.

*Second*, Isaac repeatedly emphasizes that no Convention decision has relied on Section 9 to supply personal jurisdiction, and urges that absence as dispositive. That contention addresses a question that this

appeal does not present. Most Convention enforcement actions never reach Section 9 because it is rare for a litigant to contest jurisdiction to confirm an award in the arbitral seat—the primary jurisdiction. The absence of decisions invoking the fallback provision of Section 9 therefore reflects how rarely courts must reach it, not that Congress silently disabled it.

Critically, none of the cases Isaac cites holds that the jurisdictional provision of Section 9 is preempted or constitutionally unavailable in Convention proceedings. *See Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory*, 283 F.3d 208, 212–14 (4th Cir. 2002) (New York Convention does not itself confer personal jurisdiction, which must independently satisfy due process, without addressing section 9); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 582 F.3d 393, 397–99 (2d Cir. 2009) (court must have personal or *quasi-in-rem* jurisdiction to enforce a Convention award, Convention does not supply personal jurisdiction, without section 9); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1120–22 (9th Cir. 2002) (same as *Frontera*); *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 178–79 (3d Cir. 2006) (enforcement of a Convention award

requires personal jurisdiction, without addressing section 9). Isaac's argument thus converts silence regarding 9 U.S.C. § 9 into a prohibition and transforms an absence of circuit court precedent into an implied holding that the statute does not apply in Convention cases. In none of the cited cases was the award entered in the District, as here. Isaac incorrectly argues that section 9 would find personal jurisdiction in *all* Convention cases, when in reality it would merely find jurisdiction when, as here, the arbitration is seated in the district.

*Third*, Isaac's attempt to cabin *Fuld v. Palestine Liberation Org.*, 606 U.S. 1 (2025), to terrorism statutes or sovereign defendants misreads the Court's holding. *Fuld* did not turn on the identity of the defendants or the policy objectives of the particular statute at issue, but on a structural constitutional point: when Congress confers personal jurisdiction via federal statute, the Due Process Clause of the Fifth Amendment governs, and the Fourteenth Amendment's state-centered minimum-contacts framework is not imported. *Id.* at 14–17 ("Because the State and Federal Governments occupy categorically different sovereign spheres, we decline to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment."). The Court explained

that, because the Federal Government exercises authority in a distinct sovereign sphere, Fifth Amendment due process permits a jurisdictional inquiry commensurate with that broader national authority. *Id.* at 16–17, 21.

Section 9 fits comfortably within that framework. It authorizes jurisdiction only in federal court, ties venue to the place where the arbitration award was made, and conditions the district court's authority on service of notice—providing that, once notice is served, "the court shall have jurisdiction of such party as though he had appeared generally in the proceeding." 9 U.S.C. § 9. Far from asserting boundless jurisdiction as Isaac suggests, Resp. at 32-34, section 9 reflects the type of limited, statute-specific jurisdictional authorization *Fuld* held to be constitutional under the Fifth Amendment. *Id.* at 16–17, 23–25. Nothing in *Fuld* confines its reasoning to terrorism statutes or sovereign defendants; its analysis rests on constitutional structure and statutory design. *See, e.g., Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, No. 1:24-cv-00744 (JLR), 2025 WL 3022826, at *2 (S.D.N.Y. Oct. 29, 2025) (applying *Fuld* in a Securities Act case). No court has yet applied *Fuld* to Section 9 specifically, but nothing in *Fuld* limits its reasoning to

any particular federal statute.

Finally, Salomon has not waived the Fifth Amendment argument. *Fuld* clarified the governing constitutional framework after the district court's decision. *See Powell v. Sch. Bd.*, 86 F.4th 881, 884 (11th Cir. 2023) (no waiver where intervening Supreme Court decision alters controlling law). In any event, Section 9 satisfies due process under the Fourteenth Amendment as well.

## III. Rule 4(k)(2) Provides Personal Jurisdiction for Convention Enforcement Proceedings

Rule 4(k)(2) does not rise or fall on a single, transposed jurisdictional rule. The analysis requires keeping separate frameworks distinct: nationwide statutory jurisdiction versus state-based general jurisdiction; summary enforcement proceedings versus plenary liability actions; and Fifth Amendment constraints versus Fourteenth Amendment doctrine. The district court's error—and Isaac's defense of it here—flows from collapsing these categories into one. Once the proper distinctions are restored, Rule 4(k)(2) operates exactly as intended: as a federal jurisdiction basis for claims arising under federal law when a foreign defendant's contacts are national in scope but are not concentrated in any single state.

*First*, the district court erred by treating *Daimler*'s "at home" general-jurisdiction framework as dispositive under Rule 4(k)(2), rather than as a threshold inquiry that, once resolved, gives way to a distinct nationwide specific-jurisdiction analysis. *Daimler AG v. Bauman*, 571 U.S. 117 (2014), addressed the outer limits of state-court general jurisdiction over corporate defendants—specifically, whether a defendant may be subjected to all-purpose jurisdiction in a forum for claims wholly unrelated to that forum—under the Due Process Clause of the Fourteenth Amendment. *Id.* at 137–39.

Rule 4(k)(2), by contrast, operates as a national long-arm statute, allowing federal courts to exercise personal jurisdiction over foreign defendants whose contacts with the United States as a whole support specific jurisdiction, even when no single state may exercise general jurisdiction. *See Jekyll Island–State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1316–17 (11th Cir. 2025) (describing Rule 4(k)(2) as "the national long-arm statute" and explaining that, where a defendant is not "at home" in the United States, jurisdiction depends on whether claims arise out of or relate to the defendant's contacts with the United States as a whole). Consistent with the Rule's text, the resulting due-process

inquiry looks to the defendant's contacts with the United States as a whole, not with any particular state. Fed. R. Civ. P. 4(k)(2).

As this Court now has made explicit, Rule 4(k)(2) is triggered precisely when a defendant is not "at home" anywhere in the United States, and jurisdiction therefore turns on whether the claims arise out of or relate to the defendant's nationwide contacts, not on the availability of general jurisdiction in any forum. *See Jekyll Island*, 140 F.4th at 1316–18. Treating *Daimler* as dispositive in that posture does not apply existing doctrine; it collapses distinct constitutional and statutory analyses into one and deprives Rule 4(k)(2) of independent force.

*Second*, the district court—and Isaac in defending it—asked the wrong jurisdictional question under Rule 4(k)(2). The inquiry is not whether Isaac is "at home" for purposes of general jurisdiction, nor whether his contacts would support all-purpose jurisdiction in any single forum. Where no forum of general jurisdiction exists for a respondent, Rule 4(k)(2) directs courts to ask whether the claims arise out of or relate to the defendant's nationwide contacts, *see Jekyll Island*, 140 F.4th at 1316–18, instead of whether the defendant is "at home" in any single forum. *See also King v. Bon Charge*, No. 25-cv-00105-SB, 2025 U.S. Dist.

LEXIS 267318, at *27 (D. Del. Dec. 30, 2025) (recognizing after *Fuld* that the Fifth Amendment does not incorporate the Fourteenth Amendment's minimum-contacts test and concluding that jurisdiction satisfying nationwide minimum contacts remains constitutional); *Finan v. Lafarge S.A.*, No. 22-CV-7831 (NGG) (PK), 2025 U.S. Dist. LEXIS 172784, at *71-72 (E.D.N.Y. Aug. 29, 2025) (applying *Fuld* and holding that Rule 4(k)(2) jurisdiction over foreign ATA defendants comports with the Fifth Amendment).

By treating Rule 4(k)(2) as turning on whether Isaac is 'at home' anywhere, DKT.92 at 37–38, the district court asked the wrong question. Rule 4(k)(2) applies precisely when no forum of general jurisdiction exists and instead requires a nationwide specific-jurisdiction inquiry—whether the defendant has purposefully availed itself of the United States and whether the claims arise out of or relate to those national contacts. *See Jekyll Island*, 140 F.4th at 1316–18. Treating *Daimler*'s domicile-based standard as dispositive at that stage is not consistent with Rule 4(k)(2) or *Jekyll Island*.

*Third*, Isaac's insistence on importing a full plenary minimum-contacts analysis into this case overlooks the nature of the proceeding

itself. A petition to confirm an arbitral award does not reopen the merits or expose a respondent to open-ended liability but instead seeks recognition of a liability already adjudicated through a process Congress designed to be streamlined and summary. *See Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 842 (11th Cir. 2011) (confirmation of arbitration awards is "usually routine or summary" and subject to a "heavy presumption" in favor of enforcement).

The due-process concerns animating *Daimler*—the risk that a defendant will be subject to all-purpose jurisdiction on any claim, in any forum nationwide, based on diffuse contacts—are simply not present in a confirmation proceeding limited to enforcement of a single award. Recognizing that distinction does not dispense with due process; it applies it in context. As the Supreme Court long has recognized, the constitutional analysis of personal jurisdiction may account for the posture and consequences of the proceeding at issue. *See Shaffer v. Heitner*, 433 U.S. 186, 210 n.36 (1977) (observing that, once liability has been established, enforcement proceedings permissibly may proceed in a forum that could not have adjudicated liability in the first instance). Treating a narrow, post-adjudication enforcement action as though it

were a plenary merits suit collapses that distinction and imposes constitutional constraints calibrated for an entirely different kind of case.

Finally, Isaac's reliance on the observation that no reported Convention case has applied Rule 4(k)(2) proves far less than Isaac suggests. (Resp. at 33 ("Salomon cites no case under the Convention finding personal jurisdiction under Rule 4(k)(2)")). Rule 4(k)(2) is a jurisdictional backstop, triggered only when claims arise under federal law, the defendant is not subject to jurisdiction in any single state, and other traditional bases for jurisdiction are unavailable. *See Vedanta Biosciences Inc. v. Seres Therapeutics Inc.*, 2025 U.S. Dist. LEXIS 234596, at *10-11 (D. Del. Dec. 2, 2025) (describing Rule 4(k)(2) as an alternative basis for jurisdiction when no state court has general jurisdiction); *Smarthealth Inc. v. Chemotechnique MB Diagnostics AB*, 2025 U.S. Dist. LEXIS 115063, at * 5 (D. Ariz. Jun. 17, 2025) (recognizing Rule 4(k)(2) as an alternative jurisdictional basis when no single state forum is available). As a result, courts rarely need to reach it—particularly in Convention enforcement actions, where jurisdiction is often resolved through state long-arm statutes, consent, property-based jurisdiction, or other federal jurisdictional provisions. It certainly need not be reached in

case as this one in which 9 U.S.C. § 9 applies to confirm an arbitral award entered in the district where confirmation was sought. *See supra.* The relative scarcity of Convention decisions invoking Rule 4(k)(2) therefore reflects how infrequently courts must resort to the Rule, not a settled conclusion that it is doctrinally unavailable in this context.

To be clear, Isaac is correct that personal jurisdiction in Convention enforcement proceedings must satisfy constitutional due process. But, that premise does not resolve the question presented here. The issue is not *whether* due process applies, but *what due process requires* when jurisdiction is asserted under Rule 4(k)(2). In that setting, the relevant inquiry is whether the defendant has sufficient contacts with the United States as a whole to support specific jurisdiction over the claims at issue. Isaac's authorities establish that the Convention does not itself supply jurisdiction and does not override constitutional limits; they do not hold that Rule 4(k)(2)'s nationally focused framework is unavailable or displaced in Convention cases. *See, e.g., First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 748–50 (5th Cir. 2012) (personal jurisdiction is required to confirm a Convention award and that the Convention does not override constitutional due-process limits).

In sum, Rule 4(k)(2) does not ask whether Respondent is "at home" under *Daimler*. Instead, it asks whether, in a federal action arising under federal law, the defendant's nationwide contacts support jurisdiction consistent with due process. The district court addressed and answered a different question and, in doing so, deprived Rule 4(k)(2) of the role Congress assigned it.

## IV. THE DISTRICT COURT ERRED IN REFUSING TO EXERCISE *QUASI IN REM* JURISDICTION

### A. The *Shaffer* Exception Eliminates Any Minimum-Contacts Requirement

Isaac' asks this Court to advance the proposition that a Convention award must first be confirmed in another jurisdiction before it may be enforced against assets located in a jurisdiction. Neither the New York nor the Panama Convention imposes such a requirement. To the contrary, both Conventions mandate recognition and enforcement subject only to the defenses expressly enumerated in Article V. That the District Court is the primary jurisdiction make his argument even more untenable.

In response to Salomon's argument regarding *quasi-in-rem* jurisdiction, Isaac ignores the import of the relevant Conventions and their implementation through the FAA. An international arbitration

award is the equivalent in "force of a final judicial judgment" under Article 4 of the Panama Convention. Panama Conven., Art. 4. As a result of this determination, a member state cannot erect barriers to the enforcement and recognition of awards in addition to the explicitly enumerated defenses outlined in the New York and Panama Conventions. N.Y. Conven. Art. V(1)(a)-(e); Panama Conven. Art. 5(1)(a)-(e); *Corporación AIC,* 66 F.4th at 884 (citing N.Y. Conven., Art. III ("Each Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles.")).

The Supreme Court has made clear the intent of the Conventions: to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which the agreement to arbitrate are observed and arbitral awards are enforced." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). Requiring the establishment of personal jurisdiction to reach the debtor's assets in the member state constitutes an impermissible barrier that is not required by either the Supreme Court or and the Conventions.

Issac also seeks to downplay the significance of the *Shaffer* exception to the due process requirement of the enforcement of adjudicated judgments and awards. He agrees that *quasi-in-rem* jurisdiction is rooted in the value of the assets located within the jurisdiction. Resp. at 40 (citing *Shaffer v. Heitner*, 433 U.S. 186, 199 (1977)). Yet, he minimizes the *Shaffer* exception that permits *quasi-in-rem* jurisdiction based upon a foreign judgment without conducting minimum contacts because it is found in a footnote. *Shaffer*, 433 U.S. at 210 n.36. Courts consistently have applied the *Shaffer* exception to execution and registration proceedings without requiring independent minimum contacts. *See, e.g.*, *Office Depot, Inc. v. Zuccarini*, 596 F.3d 696, 700 (9th Cir. 2010) ("In an action to execute on a judgment, due process concerns are satisfied, assuming proper notice, by the previous rendering of a judgment by a court of competent jurisdiction," citing *Shaffer*). As the Ninth Circuit noted, "[c]onstitutional due process requirements depend on the procedures at issue, not semantics." *Fid. Nat'l Fin. v. Friedman*, 935 F.3d 696, 702 (9th Cir. 2019) (applying Shaffer and holding that a court need not have personal jurisdiction to register a federal judgment pursuant to 28 U.S.C. § 1963). Here, due process is

satisfied for *quasi-in-rem* jurisdiction because an arbitral award was entered against Issac and no due process concerns arise for execution of his assets in the jurisdiction.

### B. The Panel Qualifies as a "Court of Competent Jurisdiction" Under *Shaffer*

Issac derides the interpretation of various Courts of Appeal and district court decisions applying the *Shaffer* exception to arbitration awards as a "dramatic expansion." Resp. at 40. He is wrong.

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1128 (9th Cir. 2002), held that the Convention permits enforcement through *quasi-in-rem* jurisdiction over a respondent's property. The Southern District of Florida has followed that approach, expressly adopting *Glencore* and *Shaffer*'s enforcement exception.. *D'Ivoire v. MRS Holdings Ltd.*, No. 24-cv-80363-MIDDLEBROOKS, 2024 LEXIS 288982, at *27-*28 (S.D. Fla. Dec. 18, 2024) (following *Glencore* and holding that a Convention award may be enforced *quasi-in-rem* against a respondent's Florida property without personal jurisdiction, *citing Frontera Res. Azerbajian Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 398 (2d Cir. 2009)).

Isaac dismisses *Glencore*'s discussion of *quasi-in-rem* enforcement

as dictum. Resp. Brief at 43. The Ninth Circuit expressly recognized that, in a Convention confirmation action, a court may exercise jurisdiction "over the defendant's person or, where appropriate, his property," citing *Shaffer* and approving *CME Media Enterprises B.V. v. Zelezny*. *Glencore Grain*, 284 F.3d at 1122 & n.5. That recognition formed the basis of the court's analysis and its remand inquiry into whether property existed in the forum. *Id.* at 1127–28.

Nor do Isaac's attempts to distinguish the remaining authorities succeed. In *Cerner Middle East Ltd. v. iCapital, LLC*, the district court recognized and enforced a Convention award through quasi in rem jurisdiction over a bank account located in the forum, expressly limiting execution to the attached property. 2021 U.S. Dist. LEXIS 205146 (D. Or. Oct. 24, 2021). The court did not require separate confirmation in another jurisdiction before permitting property-based enforcement.

Likewise, in *Government of the Lao People's Democratic Republic v. Baldwin*, the court explicitly adopted *Glencore*'s reading of *Shaffer*, stating that the enforcement "exception also applies to the enforcement of arbitral awards." 2021 U.S. Dist. LEXIS 224212, at *21 (D. Idaho Nov. 19, 2021) (citing *Glencore Grain*, 284 F.3d at 1127). Isaac's

characterization of that decision omits that holding.

The same is true of *Equipav S.A. Pavimentação, Engenharia e Comercio Ltda. v. Bertin*, No. 22 Civ. 4594 (PGG), 2024 WL 196670, at *1, *19 (S.D.N.Y. Jan. 18, 2024). There, the court addressed both confirmation of the arbitral award and attachment of forum property, and applied the Shaffer exception in permitting enforcement against in-state assets. 2024 WL 196670, at *1, *18–19 (S.D.N.Y. Jan. 18, 2024). Isaac's effort to distinguish *Equipav* because the award had been confirmed in the primary jurisdiction misses the point: the court enforced through property-based jurisdiction. In any event, here, Florida is itself the primary jurisdiction, as it is the seat where the award was rendered. *See Corporación AIC*, 66 F.4th at 883

Isaac similarly attempts to minimize a line of district court decisions applying the *Shaffer* exception to Convention awards. But those courts consistently have permitted enforcement where the arbitral tribunal had exercised jurisdiction over the parties and the respondent's property was located in the forum. *See e.g., Crescendo Mar. Co. v. Bank of Communs. Co.*, 2016 U.S. Dist. LEXIS 21824, 2016 WL 750351 at *14 (S.D.N.Y Feb. 22, 2016); *CME Media Enters. B.V. v. Zelezny*, No. 01 Civ.

1733 (DC), 2001 U.S. Dist. LEXIS 13888, at *9-*10 (S.D.N.Y. Sept. 10, 2001); *La Dolce Vita Fine Dining Co. v. Zhang*, No. 21-cv-3071 (LAIC), 2023 U.S. Dist. LEXIS 23196, at *5 (S.D.N.Y. Feb. 10, 2023); *Inzajat Tech. Fund, B.S.C. v. Najafi*, No. C11-04133, 2012 U.S. Dist. LEXIS 32068, at *5 (N.D. Cal. Mar. 9, 2012). These decisions reflect a consistent application of *Glencore*'s framework.

*Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory,* 283 F.3d 208 (4th Cir. 2002), likewise does not assist Issac. Although Isaac characterizes it as the sole appellate decision addressing *quasi-in-rem* jurisdiction in the Convention context, *Base Metal* did not analyze the *Shaffer* exception for enforcement of adjudicated awards. Instead, it addressed *Shaffer*'s general minimum-contacts framework without confronting footnote 36 or the enforcement-of-judgment context presented here. *See* 283 F.3d at 213.

Isaac also relies on district court decisions addressing recognition of foreign court judgments, not Convention arbitration awards. Resp. Brief, at 41 (citing *In re Braga*, 789 F. Supp. 2d 1294, 1308 (S.D. Fla. 2011)). *Braga* concerned enforcement of foreign judicial judgments and the due process limits applicable in that context. It did not involve

enforcement of arbitral awards under the New York or Panama Conventions.

Isaac also relies on *Hunt v. Mobil Oil Corp.*, 654 F. Supp. 1487 (S.D.N.Y. 1987), quoting its statement that "[a]n arbitration hearing is not a court of law." Resp. at 41. But *Hunt* made that observation in a different context. The court was explaining that parties who agree to arbitrate "relinquish the right to certain procedural niceties which are normally associated with a formal trial," including pretrial discovery. 654 F. Supp. at 1513. *Hunt* did not address *quasi-in-rem* jurisdiction or enforcement of Convention awards against forum property. It concerned procedural distinctions between arbitration and litigation—not the constitutional framework governing execution on adjudicated awards.

Issac also cites *Gov't Emps. Ins. Co. v. Elkholy*, Resp. Brief at 41, for the proposition that arbitration is not a court of competent jurisdiction. 2022 WL 237917, at *9 (D.N.J. June 30, 2022). Yet, there, the district court was analyzing a New Jersey statute that called for arbitration of no-fault insurance claims, prefacing its statement that "arbitration is clearly not a court of competent jurisdiction" with an analysis on statutory language that the term "*may sue*" prefaces "in any court of

competent jurisdiction." *Id.* (citing N.J. Stat. Ann § 17:33A-7(a)). It is from this "may sue" language in the New Jersey statute that the court that the statutes were limited to lawsuits. *Elkholy* has nothing to do with international arbitration, foreign arbitral awards, or the relevant conventions.

Finally, Isaac cites to *ZF Auto. US, inc. v. Luxshare, Ltd.*, Resp. Brief at 41-42, which also adds nothing to this issue. There, the Supreme Court was interpreting 28 U.S.C. § 1782, which involves the collection of evidence in aid of a foreign proceeding. *ZF Auto* has nothing to do with the interpretation of the relevant portions of the New York and Panama Conventions or the Court's use of a similar term in its own decision in a judicially created doctrine.

Cases interpreting terms in statutes are singularly inapposite. The analysis a court uses in determining legislative intent, as the courts were doing in *Elkholy* and *ZF*, is completely different from how this Court should examine the concepts set forth in *Shaffer*, where the Supreme Court was promulgating a judicially created doctrine.

In the end, Isaac's argument is completely circular. He argues that an arbitral award is not a judgment until it is confirmed, confirmation

requires minimum contacts with the forum, and thus the award never can be confirmed in a Convention member state despite the presence of property in state. Such a contention is untenable under the New York and Panama Conventions, as one of their main purposes is to allow for enforcement of international commercial arbitration agreements. *Scherk* 417 U.S. at 520 n.15. Isaac ignores the various policy grounds that Professor Bermann sets that in his amicus brief that emphasize that to mandate such a requirement would undermine the goals of the treaties. Resp. Brief at 20-27. They remain uncontroverted.

Isaac's arguments effectively eliminate the ability to confirm the award in the primary jurisdiction in direct contravention of this Court's *en banc* decision in *Corporación AIC*. The District Court should be reversed.

### C. Isaac's Florida Assets Satisfy the Factual Predicate for *Quasi in Rem* Type II Jurisdiction

Finally, nowhere in their response brief does Isaac deny that he owns assets within the State of Florida that would be subject to q*uasi-in-rem* jurisdiction. Thus, *quasi-in-rem* jurisdiction is valid here under *Glencore* and its progeny.

## CONCLUSION

For the foregoing reasons, Salomon respectfully requests this Court to reverse and remand for further proceedings.

Date: February 17, 2026

Respectfully submitted,

Edward M. Mullins
Daniel Alvarez Sox
Reed Smith LLP
200 S. Biscayne Blvd Ste 2600
Miami, FL 33131
Tel.: 786-747-0200

Carlos F. Concepcion
Concepcion Global PLLC
200 S. Biscayne Blvd Ste 2800
Miami, FL 33131
Tel: 305-444-6669
*Counsel for Petitioner-Appellant Salomon Btesh*

## CERTIFICATE OF COMPLIANCE

1. The undersigned hereby certifies that this Brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B). This Reply Brief contains 6,447 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f).

2. This Brief complies with the typeface requirements of Fed. R. App. P 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because the Brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Respectfully submitted,

*/s/ Edward M. Mullins*
Edward M. Mullins

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 17, 2026, a true and correct copy of the foregoing was filed using the court's ECF system, which sent an email notification of such filing to all CM/ECF participants in this case.

Date: February 17, 2026

*/s/Edward M. Mullins*
Edward M. Mullins